972 A.2d 401 (2009)
407 N.J. Super. 518
Stalena BOUIE, Appellant,
v.
NEW JERSEY DEPARTMENT OF COMMUNITY AFFAIRS, Susan Bass Levin, in her capacity as Commissioner of the Department of Community Affairs, and Deborah Heinz, in her capacity as Chief of the Bureau of Housing Services of the Department of Community Affairs, Respondents.
DOCKET NO. A-0842-07T3.
Superior Court of New Jersey, Appellate Division.
Argued March 17, 2009.
Decided June 4, 2009.
*403 Jose Ortiz argued the cause for appellant (Essex-Newark Legal Services, attorney; Mr. Ortiz, SongYi Son, Richard Spitaleri, and Natalie J. Kraner, on the briefs).
Debra A. Allen, Deputy Attorney General, argued the cause for respondents (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Allen, on the brief).
Before Judges SKILLMAN, GRALL and ESPINOSA.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The primary issue presented by this appeal is whether the hearing that the Department of Community Affairs (DCA) must afford a recipient of federal Section 8 rental assistance benefits before terminating those benefits is a "contested case" within the intent of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -25, which must be heard by an Administrative Law Judge (ALJ). We hold that such a pre-termination hearing is a contested case and that the federal statute and regulations governing the Section 8 program do not contain any provision that conflicts with the APA's requirement that this hearing be conducted before an ALJ.

I.
Appellant Stalena Bouie was a long-term recipient of rental assistance under 42 U.S.C.A. § 1437f, commonly referred to as the Section 8 program, which is administered nationally by the Department of Housing and Urban Development (HUD) and in New Jersey by the DCA. HUD allocates funds to public housing authorities (PHAs), one of which is the DCA, which in turn pay a portion of low-income tenants' rent. These payments are generally made directly to the landlord, and the tenant pays the balance of the rent. See 42 U.S.C.A. § 1437f(o); Shelby D. Green, The Public Housing Tenancy: Variations on the Common Law that Give Security of Tenure and Control, 43 Cath. U.L.Rev. 681, 695-96 (1994) (describing the Section 8 program).
On November 30, 2004, an official with the title of "Field Office Manager, Housing Assistance Element, Essex Field Office," in the Division of Housing and Community Resources of the DCA, sent appellant a notice with the caption, "Initial Decision to Deny or Terminate Tenant-Based Assistance and Refusal to Reissue a New Voucher." This notice indicated that appellant's Section 8 rental assistance would be terminated, effective December 31, 2004, because she had failed to make unspecified repairs to her apartment by a date established by the Essex Field Office. Although the notice did not so indicate, the only repair appellant had been asked to perform up to that point was the replacement of soiled carpeting.
The notice informed appellant that she had a right to a hearing before her Section 8 rental assistance would be terminated. Appellant requested such a hearing. Two days before the scheduled hearing date, which was March 10, 2005, the Essex Field Office sent appellant an amended notice of proposed termination of her Section 8 *404 rental assistance, which alleged for the first time that appellant had committed additional violations of the regulations governing the Section 8 program, including that she had failed to provide the Field Office with copies of eviction notices and other related documents served upon her by the landlord, and/or the Special Civil Part.
The hearing on the proposed termination of Section 8 benefits was held before a hearing officer of the Division of Housing in the DCA. There is no transcription of the testimony presented at that hearing. The only record of the evidence presented is the hearing officer's report and a statement of proceedings in lieu of transcript that the DCA submitted pursuant to Rule 2:5-3(f) after this appeal was filed.
Despite the inadequacy of the administrative record, it is undisputed that appellant, her landlord, and the supervisor of the Essex Field Office were the only witnesses at the hearing. The Essex Field Office relied substantially upon documentary evidence in seeking to terminate appellant's Section 8 rental assistance, such as inspection reports containing hearsay statements regarding the condition of appellant's apartment and the cause. For example, the hearing officer's March 16, 2005 report states:
An inspection of your unit done on July 29, 2004, noted soiled carpeting in the bedrooms and attributed the condition of the carpeting to tenant causes. The report also noted several other damaged areas of the unit which were the landlord's responsibility to correct. Notable among those other areas was a leaking refrigerator.
. . . .
Your landlord's letter of August 16, 2004, disputes the cause of the other damages as being attributable to him and alleges that most, if not all, of the damages are attributable to you.
A letter of September 2, 2004, from the refrigerator repair service employed by your landlord lists the damage to the refrigerator and alleges that the extent of the damage is not due to normal wear and tear.
Appellant testified that "the damage to her [rental] unit was ... due to poor quality materials and construction." She also testified "that she was never informed that she was being held responsible for anything other than the soiled carpeting in her apartment, and was not aware that the DCA had reclassified the refrigerator damage as her responsibility." She further "testified that if she had known she was being held responsible for the refrigerator, she would have had the refrigerator fixed herself in order to protect her section 8 subsidy."
However, the hearing officer rejected this testimony, finding:
You have been the sole tenant of the unit since it was constructed. It is not to be believed that the landlord soiled the carpets or damaged the refrigerator to the extent that the evidence demonstrated. The damage to the carpet cannot be attributed to poor quality materials. The damage to the refrigerator can only have been done deliberately. Both instances of damage cannot be attributed to normal wear and tear. I accept the evidence of the DCA inspection report of July 29, 2004, and the photographic evidence supplied by the landlord.
The hearing officer also found that "[n]one of the eviction notices received by you were ever made available by you to the DCA in a prompt fashion." Based on these findings, the hearing officer upheld the termination of appellant's Section 8 *405 rental assistance benefits, with an effective date of April 30, 2004.
Although not revealed by the hearing officer's report, both the DCA's statement of proceedings in lieu of transcript and the inspection reports indicate that the only damage to the apartment initially claimed to be appellant's responsibility was the soiled carpeting. However, after appellant's landlord was notified that its Section 8 housing assistance payments would be suspended because of numerous items of damage found in the inspection of appellant's apartment, the landlord's agent called the Essex Field Supervisor and convinced her that those items, particularly the refrigerator, were actually appellant's responsibility. The Supervisor reached this conclusion without any discussion with appellant or further inspection of her apartment. Based upon this conclusion, the Supervisor voided the proposed suspension of the landlord's housing assistance payments and initiated the termination of appellant's participation in the Section 8 program.
The DCA's statement of proceedings in lieu of transcript acknowledges that the documents the hearing officer relied upon in finding that appellant failed to send the eviction notices and other related documents received by her to the Essex Field Office were not provided to appellant's counsel before the March 10, 2005 hearing.
After the hearing officer's decision terminating her Section 8 rental assistance, appellant vacated her apartment sometime in June 2005.
During the summer of 2005, Essex-Newark Legal Services, which was representing appellant, had discussions with the Division of Housing regarding the termination of appellant's Section 8 assistance. The record does not indicate the precise nature of those discussions.
On December 15, 2005, Essex-Newark Legal Services submitted an appeal of the termination of appellant's Section 8 assistance to the Division of Housing. This appeal was supported by a lengthy letter, which argued that the hearing officer's decision was "riddled with significant violations of due process protections and substantive violations of the Federal regulations and DCA's Section 8 Administrative Plan." The letter contended, among other things, that the Essex Field Office's notices of proposed termination "violate[d] basic due process requirements because they fail[ed] to provide a clear factual statement as to the reason for the proposed termination."
On February 9, 2006, the Chief of the Bureau of Housing Services, defendant Deborah Heinz, sent Essex-Newark Legal Services a letter rejecting the appeal of the termination of appellant's Section 8 assistance. This letter stated in part:
The evidence presented at the hearing was sufficient to allow the hearing officer to uphold the DCA's decision to terminate assistance. Ms. Bouie soiled the bedroom carpeting and she damaged the refrigerator. She never disputed these allegations. Ms. Bouie also failed to provide copies of owner eviction notices dating to 2002 and 2004, a fact, which is undisputed. Indeed, it is unclear what defense could be prepared in view of the evidence presented.
The letter did not indicate whether there was any further remedy available to appellant within the DCA to challenge the termination.
On March 31, 2006, appellant filed this action in the Law Division challenging the termination of her Section 8 rental assistance. The complaint named as defendants the DCA, the Commissioner of the DCA, and Heinz.
*406 The parties filed cross-motions for summary judgment. After hearing oral argument, the Law Division transferred the case to this court because appellant's complaint challenged the final action of a state administrative agency, over which this court has exclusive jurisdiction. R. 2:2-3(a)(2).
Thereafter, respondents filed a motion to dismiss the appeal on the ground of untimeliness because it was not filed within forty-five days of the hearing officer's March 16, 2005 decision terminating appellant's Section 8 rental assistance. We denied the motion without prejudice to its renewal in respondent's merits brief.
On appeal, the DCA renews its argument that the appeal should be dismissed as untimely. Appellant argues that her challenge was timely and that the procedures followed by the DCA in terminating her Section 8 rental assistance benefits violated the Due Process Clause of the Fourteenth Amendment and the federal regulations governing the Section 8 program.[1]
We conclude that Bureau Chief Heinz's February 9, 2006 letter upholding the hearing officer's termination of appellant's Section 8 benefits was the DCA's final decision, and that because appellant filed an action in the Law Division challenging that decision within forty-five days of its receipt, this appeal is timely. Accordingly, we deny the DCA's motion to dismiss.
We also conclude that the DCA proceedings that resulted in the termination of appellant's Section 8 benefits violated due process requirements and the federal regulations governing the Section 8 program. Accordingly, the termination of appellant's Section 8 benefits must be reversed and the case remanded for a redetermination in proceedings that conform with due process and applicable regulatory requirements. In addition, as previously indicated, we conclude that a dispute concerning the termination of Section 8 benefits constitutes a "contested case" under the APA. Therefore, the matter must be referred to the Office of Administrative Law (OAL) for a hearing before an ALJ.

II.
We first address the DCA's argument that this appeal is untimely because the hearing officer's March 16, 2005 decision was the final agency action and appellant did not seek judicial review of that decision until nearly a year later.
Rule 2:4-1(b) provides that "[a]ppeals from final decisions or actions of state administrative agencies or officers... shall be taken within 45 days from the date of service of the decision or notice of the action taken." This same forty-five day limit applies to a challenge to state agency action that is improperly filed in a trial court and transferred to the Appellate Division pursuant to Rule 1:13-4. Kohlbrenner Recycling Enters., Inc. v. Burlington County Bd. of Chosen Freeholders, *407 228 N.J.Super. 624, 629, 550 A.2d 771 (Law Div.1987), rev'd on other grounds, 248 N.J.Super. 531, 534-35, 539, 591 A.2d 962 (App.Div.), certif. denied, 127 N.J. 551, 606 A.2d 364 (1991). However, an agency action does not become final until all avenues of internal administrative review have been exhausted. N.J.S.A. 52:14B-12; R. 2:2-3(a)(2); see K. Hovnanian Cos. v. N.J. Dep't of Envtl. Prot., 379 N.J.Super. 1, 8-9, 876 A.2d 847 (App.Div.), certif. denied, 185 N.J. 390, 886 A.2d 661 (2005). Therefore, to decide whether a state agency action was final action that had to be appealed within forty-five days, we must determine whether there was any available avenue of internal administrative review. See In re Stoeco Dev., Ltd., 262 N.J.Super. 326, 334, 621 A.2d 29 (App.Div.1993).
The APA prescribes the ordinary system of administrative adjudication in this State. Subject to certain limited exceptions, a hearing in a contested case under the APA is conducted before a hearing officer with the title of ALJ. N.J.S.A. 52:14B-10(c); N.J.S.A. 52:14F-4. However, the APA does not assign final decisionmaking authority to ALJs. An ALJ's role in the administrative process is to submit a report containing recommended findings of fact and conclusions of law to the agency head, who retains authority to make the final agency decision. N.J.S.A. 52:14B-10(c),(d). Moreover, even in those limited circumstances where the APA authorizes a hearing to be conducted by an agency-appointed hearing officer rather than an ALJ, such as hearings before the Parole Board or Public Employment Relations Commission, N.J.S.A. 52:14F-8, the hearing officer only makes a recommendation to the agency, which retains final decisionmaking authority. See Trantino v. N.J. State Parole Bd., 166 N.J. 113, 126, 764 A.2d 940 (2001); N.J. Tpk. Auth. v. Am. Fed'n of State, County & Mun. Employees, 150 N.J. 331, 336-37, 696 A.2d 585 (1997). Consequently, the assignment of final decision-making authority to a hearing officer would constitute a substantial departure from the normal system of administrative adjudication.
Section 8 rental assistance is a federal program that is pervasively regulated by federal statutes and regulations. See 42 U.S.C.A. § 1437f; 24 C.F.R. §§ 982.1 to 982.643. The governing federal regulations require a PHA that administers the Section 8 program such as the DCA to afford a recipient an opportunity for an "informal hearing" before terminating benefits. 24 C.F.R. § 982.555. Those regulations provide that the recipient must be given "a brief statement of reasons for" the proposed termination, 24 C.F.R. § 982.555(c)(2)(i), a statement of the deadline for requesting a hearing, 24 C.F.R. § 982.555(c)(2)(iii), and "the opportunity to present evidence and ... question any witnesses," 24 C.F.R. § 982.555(e)(5). The regulations also provide that "[t]he person who conducts the hearing must issue a written decision," with a brief statement of reasons, and that any "[f]actual determination" must be based upon a "preponderance of the evidence," 24 C.F.R. § 982.555(e)(6). However, those regulations do not prescribe who must conduct such a pre-termination hearing or make the final determination. Instead, the federal regulations delegate this responsibility to the PHA administering the Section 8 program, by providing that the hearing "may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person." 24 C.F.R. § 982.554(b)(1); 24 C.F.R. § 982.555(e)(4) (emphasis added). Thus, the determination of which official or officials must decide whether adequate grounds have been established for termination *408 of Section 8 benefits is a matter of state law.
The New Jersey Legislature has not enacted any statute prescribing the procedures for hearing and deciding administrative proceedings for the termination of Section 8 benefits. The DCA administers the Section 8 program in accordance with an annually updated 200-page document, entitled "Housing Choice Voucher Program Administrative Plan," the current version of which is available at http://www. state.nj.us/dca/divisions/dhcr/publications/ docs/hcvp/ hcvprogadminplansfy09.pdf.[2] Under this document, the responsibility for conducting a hearing regarding a proposed termination of Section 8 benefits is assigned to a hearing officer. Id. at 16-5. However, this document authorizes an appeal of a hearing officer's decision to the "Director of the Division of Housing," which "may be accepted" at his "discretion." Id. at 16-8. If the appeal is accepted, "[t]he Director, or designee, will conduct the review." Ibid. Thus, the informal document under which the DCA administers the Section 8 program establishes an avenue for internal administrative review of a hearing officer's decision regarding a termination of Section 8 benefits. Moreover, this document does not set any deadline for pursuing such an internal administrative review.
Viewed within this administrative framework, it is clear that the hearing officer's March 16, 2005 decision did not constitute final agency action that appellant was required to appeal to the Appellate Division within forty-five days. Although the hearing officer described the decision as "my final decision to uphold the termination of [Section 8] assistance" (emphasis added), this decision did not notify appellant that it was "the DCA's final decision" and that the only avenue for challenging it was by appeal to the Appellate Division. Therefore, the hearing officer's decision did not give the "unmistakable written notice of ... finality" required "[f]or a state administrative agency to gain repose from an appeal by virtue of the elapse of time." De Nike v. Bd. of Trs. of Pub. Employees Ret. Sys., 34 N.J. 430, 435, 170 A.2d 12 (1961).
Moreover, the DCA's subsequent actions indicated that it did not consider the hearing officer's decision to be the agency's final decision. The December 15, 2005 letter that Essex-Newark Legal Services submitted in support of the appeal of the hearing officer's decision states that a Legal Services attorney had discussions with DCA officials during the preceding summer. There is no indication the DCA informed Legal Services at that time that it considered the hearing officer's decision to be "final" or that the time for appealing that decision had expired.
Most significantly, the February 9, 2006 letter from Bureau Chief Heinz did not reject appellant's appeal of the hearing officer's decision based on untimeliness or other procedural grounds. Instead, it constituted a decision on the merits, which addressed appellant's procedural and substantive objections to the hearing officer's decision. Therefore, the Bureau Chief's February 9, 2006 letter, rather than the hearing officer's March 16, 2005 decision, constituted the DCA's final decision, and the appeal from that decision was timely.[3]

*409 III.
We next consider whether the procedures followed by the DCA in the proceeding before the hearing officer that resulted in the termination of appellant's Section 8 benefits, which was subsequently upheld by the Bureau Chief, comported with the requirements of due process and the federal regulations governing administration of the Section 8 program.
In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Court held that a state's termination of welfare benefits without first affording the recipient an opportunity for an evidentiary hearing violates the Due Process Clause of the Fourteenth Amendment. In order for a pre-termination hearing to satisfy Due Process requirements, the recipient must be given "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." Id. at 267-68, 90 S.Ct. at 1020, 25 L.Ed.2d at 299.
The governing HUD regulations recognize that the receipt of rental assistance under the Section 8 program is a public assistance benefit that cannot be terminated without affording the recipient a pre-termination hearing in conformity with the principles set forth in Goldberg. In fact, those regulations mirror the requirements of Goldberg. Compare 24 C.F.R. § 982.555(c)(1) (recipient may request hearing challenging termination if he "does not agree with the [initial] determination") with Goldberg, supra, 397 U.S. at 267, 90 S.Ct. at 1020, 25 L.Ed.2d at 298 (recipient must be afforded a pre-termination hearing "to protect a recipient against an erroneous termination of his benefits"); compare 24 C.F.R. § 982.555(c)(2)(i) (PHA must give "prompt written notice" of the proposed termination containing "a brief statement of reasons") and 24 C.F.R. § 982.555(e)(5) (recipient "must be given the opportunity to present evidence, and may question any witnesses") with Goldberg, supra, 397 U.S. at 267-68, 90 S.Ct. at 1020, 25 L.Ed.2d at 299 (recipient must receive "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally"); see also Section 8 Certificate Program, Moderate Rehabilitation Program and Housing Voucher Program, 55 Fed.Reg. 28,538 (July 11, 1990) (stating that "PHAs must adopt written informal pretermination hearing procedures for participants, which fully meet the requirements of Goldberg v. Kelly").
The procedures employed in the proceedings before the hearing officer regarding *410 the termination of appellant's Section 8 rental assistance benefits violated the Due Process Clause and the HUD regulations governing the Section 8 program because the DCA failed to give appellant "adequate notice detailing the reasons for [the] proposed termination, and an effective opportunity to defend by confronting [the] adverse witnesses and by presenting [her] own ... evidence." Goldberg, supra, 397 U.S. at 267-68, 90 S.Ct. at 1020, 25 L.Ed.2d at 299. Both notices of intention to terminate appellant's benefits were form notices that failed to inform her of the specific reasons for termination. The initial notice, dated November 30, 2004, simply stated:
You are in violation of 24 C.F.R., Section 982.522(c), Breach of HQS by family, in that you failed to take appropriate action to correct an HQS breach as described in 24 C.F.R., Section 982.404(b)(I). You are responsible for the tenant cause[d] repairs in your apartment and you were given adequate notice by the HA to have repairs completed by [a] specific date or risk cancellation of your rental assistance.
Based on this information we have decided to terminate your participation in the Section 8 Tenant-Based Assistance Program.
Thus, this notice failed to identify the "tenant cause[d] repairs in her apartment" that appellant had failed "to have completed by [a] specific date." The amended notice, dated March 8, 2005, repeated this same form language, and again failed to identify the specific "tenant cause[d] repairs" that appellant had failed to perform by the date specified by the DCA. Consequently, both notices "merely parroted the broad language of the [HUD] regulations," Billington v. Underwood, 613 F.2d 91, 94 (5th Cir.1980), without identifying the specific alleged conduct upon which the proposed termination of appellant's Section 8 benefits was based, and consequently failed to provide the notice of reasons for proposed termination required by Goldberg.
Moreover, the amended notice of intention to terminate, which was served upon appellant's attorney on March 8, 2005, only two days before the scheduled pre-termination hearing, did not provide appellant with "timely" notice of the reasons for the termination. This notice identified a completely new reason for the proposed termination  that appellant had failed to provide the DCA with copies of eviction notices served upon appellant by the landlord, and/or the Special Civil Part. Goldberg suggests that a recipient must be given at least seven days' notice of the reasons for the proposed termination of welfare benefits. See 397 U.S. at 268, 90 S.Ct. at 1020, 25 L.Ed.2d at 299. If seven days' notice of the reasons for a termination of benefits is only marginally sufficient, as Goldberg seems to indicate, the two-days' notice that the DCA gave appellant of the proposed new reason for the termination of her benefits was clearly insufficient, particularly since this notice was not accompanied by copies of the "owner eviction notices" and other related documents that appellant allegedly failed to provide the DCA, which the Legal Services attorney representing appellant needed to defend this charge.
The DCA's failure to give timely and adequate notice to appellant that the unrepaired damage she allegedly caused to the refrigerator was an additional reason for the termination of her Section 8 assistance was even more egregious. This ground for termination was not set forth in either the November 30, 2004 initial notice or the March 8, 2005 amended notice. Moreover, the July 29, 2004 inspection report, which was the only specific notice appellant received before the March 10, 2005 hearing *411 regarding the alleged damage to her apartment and allocation of responsibility for repair of that damage, assigned responsibility for the damage to the refrigerator to the landlord. The first notice appellant received that the landlord's representative had convinced the Supervisor of the Essex Office that appellant was responsible for this damage was at the March 10, 2005 hearing.
For all these reasons, we conclude that the DCA failed to give appellant timely and adequate notice of the reasons for the termination of her Section 8 benefits and therefore deprived her of an effective opportunity to defend the charges upon which the proposed termination was based. Accordingly, the termination of those benefits must be reversed.

IV.
On an initial review of this appeal, we tentatively concluded for the reasons set forth in Section III of this opinion that the hearing that resulted in the termination of appellant's Section 8 benefits was procedurally deficient and that a remand would be required. This conclusion led the court to question whether such a hearing was a "contested case" within the meaning of the APA, which should be conducted before an ALJ rather than a DCA hearing officer. Accordingly, the court asked the parties to submit supplemental briefs addressed to this question.
Both appellant and the DCA filed supplemental briefs, which agreed that a dispute concerning the termination of Section 8 benefits constitutes a contested case that must be heard by an ALJ. The DCA's supplemental brief states in pertinent part:
Historically, the DCA has held hearings within the department for all challenges to the agency's determinations regarding the Section 8 housing program. This administrative practice started with the intention that compliance with the appeal process established by [HUD] would be consistent no matter which PHA administers the federal housing program. Thus, the informal hearing procedures prescribed by HUD would be applied uniformly regardless of whether the housing program is administered by the DCA, or a local housing authority within the state.
Questions regarding DCA's administrative practice of holding Section 8 hearings within the department have not, to our knowledge, been raised until now. Having reviewed the relevant federal statutes and regulations in conjunction with the hearing requirements of the APA, the DCA concludes that appellant's challenge of the Section 8 benefits termination at bar is a "contested case" under the APA.... [A]ppellant's challenge is a "contested case" because the DCA's initial decision to terminate her participation in the Section 8 housing program involves the loss of a property interest that affords appellant the constitutional right to a due process hearing.
. . . .
Based upon the foregoing, respondent DCA respectfully requests remand of the instant appeal for handling by the DCA consistent with the APA.
Despite the DCA's concession, our conclusion that a dispute concerning the termination of Section 8 benefits is a "contested case" subject to the procedural protections of the APA is of sufficient importance to warrant a full explanation.
The APA defines a "contested case" as

a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties *412 are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing ....
[N.J.S.A. 52:14B-2(b) (emphasis added).]
Under this definition of "contested case," the APA "does not create a substantive right to an administrative hearing."[4]In re Fanelli, 174 N.J. 165, 172, 803 A.2d 1146 (2002). Therefore, "[t]he right to an administrative hearing generally must be found outside the APA in another statute or constitutional provision." Ibid. (quoting Christ Hosp. v. Dep't of Health & Senior Servs., 330 N.J.Super. 55, 61, 748 A.2d 1156 (App.Div.2000)).
As discussed in Section III of this opinion, the Supreme Court held in Goldberg v. Kelly that the Due Process Clause requires an opportunity for a hearing before the termination of public assistance benefits. Both HUD and the DCA recognize that Section 8 benefits are public assistance benefits which, under Goldberg v. Kelly, may not be terminated without first providing the recipient an opportunity for a hearing. See Ressler v. Pierce, 692 F.2d 1212, 1215-16 (9th Cir.1982) (holding that an applicant for Section 8 assistance is entitled to procedural due process safeguards); Escalera v. New York City Hous. Auth., 425 F.2d 853, 861 (2d Cir.) (holding that "government cannot deprive a private citizen of his continued tenancy [in public housing], without affording him adequate procedural safeguards"), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); see also State in Interest of D.G.W., 70 N.J. 488, 501-02, 361 A.2d 513 (1976) (holding that "due process rights are found whenever an individual risks governmental exposure to a grievous loss" and listing "termination of welfare benefits" as one such grievous loss).
Furthermore, the dispute over the termination of appellant's Section 8 benefits involves contested adjudicative facts that require an evidentiary hearing to resolve. Cf. Sloan v. Klagholtz, 342 N.J.Super. 385, 392, 776 A.2d 894 (App.Div.2001) (noting that "[i]f a matter before an agency does not present contested material issues of fact that can be decided only `after [an] opportunity for an agency hearing,' N.J.S.A. 52:14B-2(b), it is not a contested case subject to transfer to the OAL"). The grounds upon which the DCA terminated appellant's Section 8 benefits  her alleged soiling the carpets, deliberately causing damage to the refrigerator, and failing to transmit eviction notices to the landlord  were all factual in nature. Moreover, the statement in lieu of transcript and appellant's certification show that appellant disputed the factual allegations upon which the DCA relied. Therefore, unless the agency head elects to conduct the evidentiary hearing personally, see N.J.S.A. 52:14F-8(b),[5] the DCA is required to transmit the matter to the OAL for a hearing before an ALJ in conformity with N.J.S.A. 52:14B-10.
Although a proceeding involving the termination of Section 8 benefits is a "contested case" that must be heard by an ALJ *413 rather than an agency hearing officer, the federal statutes and regulations governing the Section 8 program could mandate an alternative form of hearing which, under the Supremacy Clause, U.S. Const. art. VI, cl. 2, would be binding upon the DCA in its administration of the program. See Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 615-18, 725 A.2d 1104 (1999). However, as discussed in Section III of this opinion, although HUD has adopted regulations that prescribe certain standards for the conduct of hearings involving the termination of Section 8 benefits, those regulations do not require such a hearing to be conducted by a hearing officer employed by the PHA administering the program  in this case the DCA. Instead, the subsection of the regulations dealing with "hearing procedures" requires each public housing authority to adopt an "administrative plan," which "must state the PHA procedures for conducting informal hearings for participants." 24 C.F.R. § 982.555(e)(1). This subsection requires "[t]he person who conducts the hearing" to issue a written decision stating the reasons for the decision, 24 C.F.R. § 982.555(e)(6), but does not circumscribe a PHA's authority to determine who will conduct a pre-termination hearing. To the contrary, another subsection provides that "[t]he hearing may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person." 24 C.F.R. § 982.555(e)(4)(i). Therefore, there is no conflict between the APA's requirement that a pre-termination hearing be conducted before an ALJ and the HUD regulations governing hearing procedures. In fact, the conduct of Section 8 pre-termination hearings before ALJs, as provided under the 1978 amendments to the APA, which undertook "to bring impartiality and objectivity to agency hearings" by "establishment of a corps of independent hearing officers," Unemployed-Employed Council of N.J., Inc. v. Horn, 85 N.J. 646, 649-50, 428 A.2d 1305 (1981), will promote the HUD regulations' goal of providing Section 8 recipients with fair hearings before impartial decisionmakers.
Finally, we note that the HUD regulations require pre-termination hearings to be conducted "in a reasonably expeditious manner upon the request of the family." 24 C.F.R. § 982.555(d). The rules governing hearings before the OAL provide for accelerated scheduling of cases that require expedited disposition. See N.J.A.C. 1:1-9.4. Pursuant to this rule, the OAL has routinely provided for expedited disposition of cases involving the termination of public assistance benefits. We assume the OAL will hear and decide cases involving the termination of benefits under the Section 8 program on a similar expedited basis.
Accordingly, we reverse the final decision terminating appellant's Section 8 benefits and remand the case to the DCA to transmit to the OAL for a contested case hearing.
NOTES
[1] Appellant's Law Division complaint asserted claims under 42 U.S.C.A. § 1983. After transfer of the case to this court, appellant did not present any argument under 42 U.S.C.A. § 1983 or seek to preserve the right to pursue such claims in the Law Division in accordance with the procedures set forth in Maisonet v. N.J. Dep't of Human Servs., 140 N.J. 214, 226-28, 657 A.2d 1209 (1995).

Appellant's reply brief referred to those claims but did so solely in the course of arguing that this appeal was timely. In any event, a party may not advance a new argument in a reply brief. Borough of Berlin v. Remington Vernick Eng'rs, 337 N.J.Super. 590, 596, 767 A.2d 1030 (App.Div.), certif. denied, 168 N.J. 294, 773 A.2d 1158 (2001). Therefore, any claim that appellant may have had under 42 U.S.C.A. § 1983 was abandoned.
[2] We note that the DCA has adopted the procedures it follows in administering the State Rental Assistance Program as administrative rules. See N.J.A.C. 5:42-1.1 to -7.3. We suggest that the DCA consider also adopting the procedures it follows in administering the Section 8 program as administrative rules.
[3] Because the issue has not been briefed, we do not decide whether the Chief of the Bureau of Housing Services has been delegated final decision-making authority with respect to the termination of Section 8 rental assistance benefits. Insofar as we can determine, it is the DCA, not any bureau or division within the DCA, that administers the Section 8 program as a PHA. The Commissioner of the DCA is the head of this department of state government. N.J.S.A. 52:27D-2. As the head of the department, the Commissioner has final decision-making authority in an adjudicatory proceeding unless there has been a valid delegation of such authority to a subordinate official. N.J.S.A. 52:14B-10(c). Consistent with this view, the Commissioner apparently acts as the final decision-maker in proceedings involving the termination of rental subsidies under the State Rental Assistance Program, see N.J. Dep't of Cmty. Affairs v. Love, 2008 WL 1709931, at 5-6, 2008 N.J. AGEN LEXIS 215, at 14-15 (N.J.Adm. Mar. 26, 2008), which is similar to a termination of Section 8 rental assistance. On remand, the DCA should consider whether the Bureau Chief has been delegated authority to make a final decision with respect to a termination of Section 8 benefits.
[4] The one exception to this general statement is set forth in N.J.S.A. 52:14B-11, which provides that "[n]o agency shall revoke or refuse to renew any license unless it has first afforded the licensee an opportunity for hearing in conformity with the provisions of this act applicable to contested cases." This exception obviously does not apply to a dispute regarding the termination of public assistance benefits.
[5] As discussed in footnote three, we do not decide whether the Commissioner of DCA or a subordinate official within DCA is the "agency head" with authority to make the final decision in a case involving the termination of Section 8 benefits.