**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2369-23

S.R.,[1]

    Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF COMMUNITY AFFAIRS,
DIVISION OF HOUSING AND
COMMUNITY RESOURCES,

    Respondent-Respondent.

_____

Argued September 10, 2025 – Decided September 22, 2025

Before Judges Rose and Torregrossa-O'Connor.

On appeal from the New Jersey Department of Community Affairs, Docket No. SRAP 101-22.

John M. Corcoran argued the cause for appellant (South Jersey Legal Services, Inc., attorneys; Justine Digeronimo, John M. Corcoran and Kenneth M. Goldman, on the briefs).

---

[1] We use initials consistent with the record provided on appeal. Accord R. 1:38-3(c)(11).

Andrew Hedin, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Andrew Hedin, on the brief).

PER CURIAM

Petitioner S.R. appeals from a March 13, 2024 final agency decision of the Department of Community Affairs (DCA), adopting an initial decision of the Administrative Law Judge (ALJ), which terminated S.R. from the State Rental Assistance Program (SRAP).[2]  We affirm.

I.

Although both parties moved for summary decision before the ALJ, because judgment was granted in favor of DCA, we consider the facts in a light most favorable to S.R.  See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).  We summarize the pertinent facts and events from the record provided on appeal, including the joint stipulation of material facts and the certifications provided on behalf of S.R.

---

[2]  SRAP is "a rental assistance program for low-income individuals or households, who are not recipients of Federal housing choice vouchers under the Housing Choice Voucher Program (formerly known as the 'Section 8 Housing Assistance program')."  N.J.A.C. 5:42-1.1(a); N.J.S.A. 52:27D-287.1.

Since 2010, S.R.'s rent for his one-bedroom apartment in Sea Girt was subsidized by SRAP. In 2016, S.R. pled guilty to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), as amended from second-degree sexual assault by contact, N.J.S.A. 2C:14-2(b), for intentionally touching a twelve-year-old girl's sexual or intimate parts. Accordingly, S.R. was classified as a Tier I sex offender under Megan's Law, N.J.S.A. 2C:7-1 to -23, and therefore was required to maintain lifetime sex offender registration with the state.

On February 22, 2017, DCA issued an initial decision terminating S.R. from SRAP for violating the program's requirements because he was a Megan's Law registrant. In its decision, DCA noted it "may deny admission for an applicant or terminate assistance for a participant . . . . [i]f any member of the family has committed . . . [a] corrupt or criminal act."

S.R. timely requested an informal hearing contesting his termination. Thereafter, DCA issued an amended initial decision terminating S.R. from SRAP because S.R. "ha[d] been arrested and convicted of . . . criminal sexual contact."

A-2369-23

In August 2022, the matter was transmitted to the Office of Administrative Law as a contested case.[3]  In an October 4, 2022, letter to DCA, S.R.'s attorney sought a reasonable accommodation, under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to 12213, requesting DCA withdraw S.R.'s termination from SRAP.  In the letter, S.R.'s attorney stated S.R. "has been developmentally disabled his entire life" and his "mental impairments significantly impacted him [sic] committing a sexual offense in 2013."  S.R.'s counsel argued S.R. continued to receive psychological treatment for his disability, he was "otherwise in good standing with the DCA and his current landlord," and the "modification would not 'fundamentally alter' the nature of the DCA's SRAP program."

In February 2023, DCA denied S.R.'s request for an accommodation under the ADA.  In its correspondence, DCA stated an accommodation would "directly contravene" N.J.A.C. 5:42-4.1(g), which provides:  "DCA shall deny admission or terminate [SRAP] to sex offenders subject to a lifetime registration requirement under a state sex offender registration program."

---

[3]  As the ALJ noted in her decision, the record does not explain the five-year delay in transmitting the case.  Nor do the parties provide an explanation on appeal.

A-2369-23

On September 18, 2023, both parties simultaneously moved for summary decision before the ALJ, who decided the matter on the papers. In support of his claimed disability and request for reasonable accommodation, S.R. provided certifications of his psychiatrist, mother, pastor, and community resource workers. DCA did not file opposing certifications.

In her initial decision that followed, the ALJ concluded DCA did not abuse its discretion in terminating S.R. from SRAP in view of his conviction and sex-offender registration requirement. The ALJ recognized "the present language of N.J.A.C. 5:42-4.1(g) removes all discretion" from DCA and now "compel[s DCA] to terminate S.R." from SRAP in view of his lifetime sex offender registration requirement under Megan's Law.

Noting DCA did not counter S.R.'s certifications and reports, the ALJ further found S.R. established his disability. The ALJ stated DCA also failed to use "the interactive process in response to [S.R.'s] request" for a reasonable modification under the ADA to determine if any accommodation was possible.

Although the ALJ found DCA technically violated the interactive process, she concluded that analysis would have been "unfruitful" because DCA was compelled to terminate S.R. from SRAP under N.J.A.C. 5:42-4.1(g). The ALJ

5

determined, notwithstanding S.R.'s disability, S.R. "[wa]s not exempt from the requirement of N.J.A.C. 5:42-4.1(g)."

On December 12, 2023, S.R. filed exceptions to the initial decision, arguing the ALJ's decision was "arbitrary, capricious, unreasonable, contrary to law, and . . . otherwise not supported by the substantial credible evidence." Claiming he "made a prima facie case for a reasonable accommodation," S.R. requested DCA rescind his termination from SRAP.

On March 13, 2024, DCA's Acting Commissioner issued a final decision, adopting the ALJ's conclusion that N.J.A.C. 5:42-4.1(g) compelled DCA to terminate S.R. from SRAP. The Acting Commissioner stated "the ALJ correctly held that the current version of N.J.A.C. 5:42-4.1(g) controls in this case and compelled termination because [S.R.] is a lifetime registrant sex offender."

However, the Acting Commissioner rejected the ALJ's "additional background facts, and the conclusions that [S.R.] has a disability," noting a factual hearing was not conducted "to question the authors" of the letters and certifications submitted by S.R. in support of his disability. The Acting Commissioner thus found the ALJ's finding on S.R.'s disability was unnecessary. The Acting Commissioner reasoned "[t]he current regulation requires [DCA] to terminate [S.R.] from SRAP because he is a lifetime sex

6

offender registrant; there is no reasonable accommodation that could have been made in this case because there is no middle ground between termination and non-termination." The Acting Commissioner concluded "any accommodation would completely eviscerate the purpose of the regulation."

On appeal, S.R. argues DCA erroneously concluded N.J.S.A. 5:42-4.1(g) is not preempted by the ADA and maintains he is entitled to a reasonable modification. S.R. contends "there is no dispute" he is disabled and would otherwise meet all the essential requirements to receive SRAP benefits. In S.R.'s view, his criminal conviction was "the direct result of his diagnosed disabilities" as his mental impairment led him to engage in criminal behavior. S.R. therefore asserts DCA wrongfully denied rental assistance based on his disability.

II.

Our review of an agency decision is well settled. Ordinarily, we defer to the Commissioner's determination unless it was "arbitrary, capricious, or unreasonable." Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). In making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly

erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

An agency decision will be upheld "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). In determining whether agency action is arbitrary, capricious, or unreasonable, our role is restricted to three inquiries:

(1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.

[R.S. v. Div. of Med. Assistance and Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting H.K. v. Div. of Med. Assistance and Health Servs., 379 N.J. Super. 321, 327 (App. Div. 2005)).]

We note, however, a court is "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." Carter, 191 N.J. at 483 (quoting Mayflower Sec. Co., Inc v. Bureau of Sec. in Div. of

Consumer Affs., 64 N.J. 85, 93 (1973)). "Because an agency's determination on summary decision is a legal determination, [appellate] review [of that decision] is de novo." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204 (2015).

The standard for summary decision motions pursuant to N.J.A.C. 1:1-12.5 is "substantially the same as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation." Id. at 203. As such, an agency must ascertain "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 204 (quoting Brill, 142 N.J. at 523); see also N.J.A.C. 1:1-12.5(b) (providing a summary decision "may be rendered if the papers and discovery which have been filed together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law").

However, our review of an agency's summary decision differs slightly from our de novo review of a court's decision on summary judgment. See St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 15 (2005). Although we employ a de novo standard of review to an agency's determination that there are no genuine

issues of material fact, we aim to "give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." Ibid.

"DCA has adopted the procedures it follows in administering the [SRAP] as administrative rules." Bouie v. N.J. Dep't of Cmty. Affs., 407 N.J. Super. 518, 529 n.2 (App. Div. 2009) (citing N.J.A.C. 5:42-1.1 to -7.3). The Commissioner of DCA "acts as the final decision-maker in proceedings involving the termination of rental subsidies under" SRAP. Id. at 530 n.3. When denying or terminating assistance to an individual, DCA must provide the grounds for doing so and the process to request a fair hearing. N.J.A.C. 5:42-4.3(a).

N.J.A.C. 5:42-4.1(j) provides, in pertinent part: "DCA may deny assistance to an applicant or terminate assistance to a participant family if any member of the family has committed, based on the preponderance of the evidence[,] . . . . a violent criminal act." In 2018, the regulation was amended, adding: "DCA shall deny admission or terminate assistance to sex offenders subject to a lifetime registration requirement under a state sex offender registration program." N.J.A.C. 5:42-4.1(g).

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied

the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). The ADA regulations require public entities make "reasonable modifications in policies, practices, or procedures <u>when the modifications are necessary to avoid discrimination on the basis of disability</u>, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i) (emphasis added). "Title II 'requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service.'" <u>Lasky v. Moorestown Twp.</u>, 425 N.J. Super. 530, 539 (App. Div. 2012) (quoting <u>Tennessee v. Lane</u>, 541 U.S. 509, 532 (2004)); <u>see also</u> 42 U.S.C. § 12131(2).

With these governing legal principles in view, we reject S.R.'s preemption argument. DCA does not dispute the ADA preempts conflicting state law. As DCA correctly argues, however, the issue turns on whether S.R. was terminated from SRAP pursuant to his disability or his Megan's Law registration.

It is undisputed S.R. was convicted of criminal sexual contact with a minor and is subject to lifetime sex offender registration under Megan's Law. The plain language of N.J.A.C. 5:42-4.1(g) makes clear DCA must terminate a SRAP

11

participant who is required to maintain lifetime sex offender registration. Accordingly, we discern no error in DCA's final decision concluding S.R. is ineligible to receive SRAP benefits in view of his lifetime Megan's Law registration status.

Although we are satisfied DCA properly terminated S.R.'s SRAP benefits, for the sake of completeness, we address S.R.'s contention he was terminated from SRAP because of his disability and he was entitled to an accommodation under the ADA. Citing his unrefuted certifications, S.R. contends "there is no dispute" he is disabled and he "meet[s] all essential [SRAP] requirements." S.R. argues his criminal conviction was "the direct result of his diagnosed disabilities" because his mental impairment led him to engage in criminal behavior. S.R. therefore argues he established a prima facie case of disability discrimination. S.R. asserts DCA failed to show his proposed accommodation "would fundamentally alter the nature of the SRAP program."

To make a prima facie showing of disability discrimination under Title II of the ADA for failure to make a reasonable accommodation, a party must show: "(1) he [or she] is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such

12

entity; (4) by reason of his [or her] disability." Haberle v. Troxell, 885 F.3d 170, 178-79 (3d Cir. 2018) (second alteration in original) (quoting Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

In the present matter, S.R. failed to establish DCA terminated his SRAP assistance "by reason of his disability." See ibid. Although S.R.'s certifications aver his sexual conduct was the result of his disability, S.R.'s purported disability does not excuse his criminal conviction, which subjected him to lifelong Megan's Law registration. Nor do his certifications otherwise "link" his termination from SRAP to his disability, as S.R. contends. Accordingly, we discern no error in DCA's decision terminating S.R. from SRAP.

To the extent not addressed, S.R.'s remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Pursuant to our governing standard of review, see Melnyk, 241 N.J. at 40, we affirm substantially for the reasons expressed in the Acting Commissioner's cogent final decision, which "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

13

A-2369-23