**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3124-23

ERNEST TURNER,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION
AND ANNUITY FUND,

     Respondent-Respondent.

_____

Argued November 6, 2025 – Decided February 2, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Michael P. DeRose argued the cause for appellant (Crivelli, Barbati & DeRose, LLC, attorneys; Michael P. DeRose, on the briefs).

Payal Y. Ved, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Payal Y. Ved, on the brief).

PER CURIAM

Petitioner Ernest Turner appeals from the May 3, 2024 final administrative determination of the Board of Trustees (Board) of the Teachers' Pension and Annuity Fund (TPAF) affirming its initial determination his ordinary disability retirement was non-bona fide and denying his request for an administrative hearing. We affirm.

I.

Turner was enrolled in the TPAF effective October 1, 1983 and held various TPAF positions throughout his career. In February 2002, he commenced employment as a Business Administrator/Board Secretary with the Glen Rock Borough Board of Education (Glen Rock). On March 24, 2004, he applied for TPAF ordinary disability retirement, effective July 1, 2004.

On May 24, 2004, while Turner's application was pending, the Northern Highlands Regional High School District Board of Education (Northern Highlands) appointed him its Director of Transportation for Region I for the 2004-05 school year. The position was effective July 1, 2004 with an annual salary of $104,000.

2

On August 5, 2004, the Board, unaware Turner had begun employment with Northern Highlands, approved his ordinary disability retirement effective July 1, 2004. The Board's letter memorializing its decision advised him:

> If you continue to receive a salary beyond the effective date of retirement, no retirement benefits shall be paid for the period where you received salary and no salary or service credit shall be provided for the service rendered after the approved effective date of retirement. . . .
>
> Your retirement allowance as a disability retirant is subject to adjustment if your earnings from employment after retirement exceed the difference between the pension portion of your retirement allowance and the salary attributable to your former position.

Because of the potential reduction explained in the second paragraph, Turner asked Northern Highlands to lower his salary. On June 27, 2005, counsel for Northern Highlands sent a letter to its board secretary advising "contrary to Turner's representations," the TPAF "provides for the adjustment of the individual's pension benefits and not the individual's salary." Counsel posited "it is a safe assumption that the reduction of that salary purely with the intention of allowing Turner to collect the maximum amount of disability for which he has been approved would be contrary to the treasury regulations." A July 25, 2005 follow-up letter from counsel to Turner acknowledged Turner was

3

"interested in accepting a reduced salary in order to avoid a reduction in [retirement] benefits." Counsel concluded the reduction "appear[ed] to run contrary [to] the plain language of the [pension] regulations" but there was no "legal precedent prohibiting" it. Northern Highlands subsequently reappointed Turner to the same position for the 2005-06 school year, with a reduced annual salary of $78,500.

Turner's employment contracts for the 2004-05 and 2005-06 school years required him to "hold the certification of Supervisor as issued by the New Jersey Department of Education," the same certificate required for the Business Administrator/Board Secretary position from which Turner was granted ordinary disability retirement. The contracts also indicated compulsory deductions would be made for TPAF contributions, although the deductions were not taken.

In 2007, the Division of Pensions and Benefits (Division) conducted an excess earnings review based on Turner's post-retirement income. It determined Turner's income in calendar year 2005 exceeded the permissible amount under N.J.S.A. 18A:66-40(a) and, as a result, he was liable for a $1,463.37 repayment. Turner appealed the decision to the Board, disputing the salary of his former position with Glen Rock. In July 2007, the Board denied his appeal.

4

In August 2021, the Division conducted another excess earnings review. In January 2022, the Pension Fraud and Abuse Unit (PFAU) notified the Board of Turner's TPAF-eligible post-retirement employment. In an April 20, 2022 letter, the Board advised Turner it had voted to suspend his retirement allowance pending completion of the PFAU investigation.

The PFAU's December 14, 2023 report provided the foregoing information regarding Turner's employment with Northern Highlands. It also outlined Turner's formation of Summit Management Solutions, LLC (SMS) in 2007, which provided "consulting services in the areas of fiscal management" to over seventy state-administered boards of education or school districts. The details of these contracts, which spanned the entirety of Turner's retirement, need not be recounted here because they did not form the basis of the Board's final agency decision.

On January 11, 2024, the Board adopted the PFAU's factual finding that Turner violated N.J.S.A. 18A:66-40(b) by returning to TPAF-eligible employment with Northern Highlands while on TPAF disability retirement, and he also violated N.J.A.C. 17:3-6.2, which requires a thirty-day break in service, by never ceasing to work before collecting his pension benefits. Based on these findings, the Board determined Turner's ordinary disability retirement was non-

5

bona fide, and he was liable for repayment of all retirement benefits disbursed from July 1, 2004 to April 1, 2022, along with mandatory pension contributions from July 1, 2004 through June 30, 2006.

Turner's administrative appeal contended "his subsequent engagements with various school districts following his 2004 retirement were as an independent contractor" and consultant. He claimed the contracts were with SMS to provide services on a temporary basis and "never involved hiring . . . Turner as a full-time or permanent employee. He was never on these entities' payrolls[,] and it was SMS that was paid by such entities." Turner explained his work as a consultant accommodated his medical issues that formed the basis for his disability retirement.

Turner also contended he met with a Division representative after the Board approved his disability retirement in 2004, during which he "advised the representative of his engagement with Northern Highlands." Turner claimed the representative advised "he did not need to make any changes to his retirement status despite the services he was performing for that district." Turner argued the Division, therefore, was on notice of his post-retirement employment and ratified his actions; in the alternative, he contended the Board was equitably

6

estopped from determining his retirement was non-bona fide. He also requested a hearing as a contested case.

On April 4, 2024, the Board considered Turner's administrative appeal and affirmed its prior decision. The Board noted Northern Highlands approved Turner's "appointment" to the Director position with "an annual salary." Turner's employment contracts with Northern Highlands required him to "hold the certification of Supervisor as issued by the New Jersey Department of Education." The contracts also defined the position as TPAF-eligible and noted the TPAF contribution as a compulsory deduction.

The Board rejected Turner's arguments regarding his "subsequent engagements" with SMS because his arrangement with Northern Highlands plainly showed he was individually hired as an employee. It also determined equitable estoppel was inapplicable because "the record is clear . . . Turner's retirement was not bona fide." Finding no genuine dispute of material fact, the Board denied his request for an administrative hearing.

II.

Our review of decisions by administrative agencies is limited. In re Stallworth, 208 N.J. 182, 194 (2011). An agency's determination must be sustained "unless there is a clear showing that it is arbitrary, capricious, or

unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result' . . . ." In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

While we are not bound by an agency's interpretation of legal issues, which are reviewed de novo, Russo, 206 N.J. at 27, we must "give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005)). "Such deference has been specifically extended to state agencies that administer pension statutes." Ibid.

On appeal, Turner reprises his arguments before the Board: his post-retirement employment was as a consultant through SMS; he met with a Division representative in 2004 and was advised he did not need to change his retirement

status;[1] the Board was on notice of his post-retirement employment; and his equitable arguments entitled him to a hearing.

Pursuant to N.J.S.A. 18A:66-40(b), if an individual who has been granted disability retirement "becomes employed again in a position which makes [them] eligible to be a member of the retirement system, [their] retirement allowance and the right to any death benefit as a result of [their] former membership, shall be canceled until [they] again retire[]."  The record plainly reflects Turner, who was granted a disability retirement effective July 1, 2004, became employed again in a TPAF-eligible position with Northern Highlands that same day.  Turner's self-serving claim he was an independent consultant is belied by the explicit contractual terms of his employment with Northern Highlands.

In addition, N.J.A.C. 17:3-6.2 provides "[a] member's retirement allowance shall not become due and payable until [thirty] days after the date the

---

[1]  Although not raised in his administrative appeal, Turner also argues he contacted the Division in 2012 and 2015.  These contacts were reflected in the PFAU's December 14, 2023 report, which states Turner "sat down with a [p]ension [c]ounselor to discuss return to employment issues" in June 2012; and in October 2015, he emailed the Division "to inquire when he would be able to use his certification again.  Turner was given specific advice that the use of his certificate while retired on [o]rdinary [d]isability [r]etirement would be contrary to relevant pension [s]tatutes."

Board approved the application for retirement or [thirty] days after the date of the retirement, whichever is later." Because Turner commenced employment with Northern Highlands the same day his retirement was effective, he failed to have the requisite thirty-day break in service.

We are also unpersuaded the Board erred in denying Turner's request for a hearing. A contested case is "a proceeding . . . in which the legal rights, duties, obligations, privileges, benefits[,] or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency . . . after opportunity for an agency hearing." Bouie v. N.J. Dep't of Cmty. Affs., 407 N.J. Super. 518, 535 (App. Div. 2009) (emphasis omitted) (quoting N.J.S.A. 52:14B-2(b)). Because this definition "does not create a substantive right to an administrative hearing," the right "must be found . . . in another statute or constitutional provision." Ibid. (quoting In re Fanelli, 174 N.J. 165, 172 (2002)).

The Legislature afforded agencies the "exclusive authority to determine whether an administrative matter is a 'contested case' within the intent of the [Administrative Procedure Act]." Sloan ex rel. Sloan v. Klagholtz, 342 N.J. Super. 385, 392 (App. Div. 2001). If a matter "does not present contested material issues of fact . . . it is not a contested case subject to transfer to the [Office of Administrative Law]." Ibid.

The Board is authorized to correct errors if an individual receives a retirement benefit to which they are not legally entitled. N.J.S.A. 43:16A-18. An individual who is eligible for pension benefits is entitled to a liberal interpretation of the statute, but "eligibility [itself] is not to be liberally permitted." Krayniak v. Bd. of Trs., Pub. Emps.' Ret. Sys., 412 N.J. Super. 232, 242 (App. Div. 2010) (quoting Smith v. Dep't of Treasury, 390 N.J. Super. 209, 213 (App. Div. 2007)).

"Generally, equitable principles are rarely applied against governmental entities." Seago v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 257 N.J. 381, 394-95 (2024). However, equitable estoppel "'may be invoked' against a governmental entity 'where interests of justice, morality and common fairness clearly dictate that course.'" Id. at 395 (quoting Middletown Twp. Policemen's Benevolent Ass'n Loc. No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000)). "Equitable considerations are relevant in evaluating the propriety of conduct taken after substantial reliance by those whose interests are affected by subsequent actions . . . [in order] to avoid wrong or injury ensuing from reasonable reliance upon such conduct." Ibid. (alteration in original) (quoting Skulski v. Nolan, 68 N.J. 179, 198 (1975)).

Having reviewed the record in light of these principles, we discern no error in the Board's denial of Turner's request for a hearing because there were no issues of material fact. Although Turner claimed he met with a Division representative who ratified his post-retirement employment, the Division has no record of this contact, and Turner did not produce any official correspondence confirming this purported advice. Even accepting his assertion as true, a Division representative cannot bind the Board. See Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 60 (App. Div. 2019).

Turner's contention the Division was on notice of his TPAF employment due to other interactions similarly lacks merit, as he provided no documentation he notified the Division he was working in a TPAF-eligible position. Not all post-retirement employment is prohibited, and Turner's discussions concerned potential reductions in his pension benefit, not whether he was engaging in TPAF-eligible employment. Because Turner's administrative appeal failed to raise any viable equitable arguments, we discern no abuse of discretion in the Board's denial of his request for an administrative hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division