29 A.3d 293

Tonya WALKER

v.

DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT.

No. 97, Sept. Term, 2010.

Court of Appeals of Maryland.

Sept. 23, 2011.

Robert McCraig (Legal Aid Bureau, Inc., Salisbury, MD), on brief, for appellant.

Kathleen E. Wherthey, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD; Gary W. Desper, Asst. Atty. Gen., Maryland Department of Housing and Community Development, Crownsville, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BARBERA, J.

In this case we are asked to consider whether, prior to the termination of housing assistance benefits administered pursuant to the "Section 8 Housing Program,"[1] the Department of Housing and Community Development ("Department") must, upon request, provide a "contested case" hearing in accordance with Maryland's Administrative Procedure Act, Md. Code (1984, 2009 Repl.Vol.), §§ 10–101 through 10–305 of the State Government Article ("S.G."). This question is of much interest to Appellant Tonya Walker, whose housing benefits were terminated by the Department for her alleged violations of certain "family obligations"[2] required to be satisfied for continued participation in the Section 8 program. Appellant challenged that decision at an informal administrative hearing at which, pursuant to Departmental and federal regulation, a hearing officer appointed by the Department presided. The hearing officer affirmed the Department's decision.

Appellant sought judicial review of the Department's decision, asserting that the informal hearing was intended to be a "contested case" under Maryland's APA, see SG § 10–202(d), to which certain rights and procedures apply, but were not followed in her case. The Circuit Court rejected Appellant's contention and affirmed the Department's decision. Appellant noted a timely appeal to the Court of Special Appeals. Before argument in that court, we, on our initiative, issued a writ of certiorari.

---

1. The term Section 8 Housing Program refers to the "fact that the program was authorized by a rewriting of § 8 of the United States Housing Act of 1937." *Montgomery County v. Glenmont Hills Assocs.*, 402 Md. 250, 256 n. 1, 936 A.2d 325, 328 n. 1 (2007).

2. The term "family obligations" is used throughout the federal regulations governing the Section 8 program and refers, generally, to certain ongoing obligations that Section 8 participants must meet in order to remain in the program. We shall explain the term more fully, *infra*.

## I.

### *The Federal Housing Choice Voucher Program*

The Section 8 Housing Program, otherwise known as the Housing Choice Voucher Program (hereinafter "HCVP"), was enacted for the purpose of "aiding low-income families in obtaining a decent place to live...." 42 U.S.C. 1437f(a). The HCVP is administered by the Department of Housing and Urban Development ("HUD"), the regulations for which are found in 24 C.F.R Part 982. Under the HCVP, HUD enters into contracts with, and provides funding to, state public housing agencies ("PHAs") for the purpose of providing rental subsidies to eligible program participants.

Each PHA must adopt an Administrative Plan that conforms with the statutory requirements and HUD regulations. Individuals seeking to participate in the HCVP program must apply to the designated PHA. The PHA, in conformance with criteria set forth by 42 U.S.C. § 1437f(*o* )(4), HUD regulations, and the procedure established by its Administrative Plan, is responsible for processing and qualifying the low income applicants. *See* 42 U.S.C. § 1437f(*o* )(6).

Once an applicant is approved by the PHA, he or she is provided a HUD voucher and approval form. The participant is then responsible for locating housing. Once a participant identifies rental housing and reaches an agreement with the landlord, the participant must obtain tenancy approval from the PHA. To be approved, the apartment must meet housing quality standards established by HUD, *see* 42 U.S.C. § 1437f(*o* )(8)(B); 24 C.F.R § 982.305(a); the rent must be reasonable, *see* 42 U.S.C. § 1437f(*o* )(10)(A); and the lease must conform to HUD requirements, including as an attachment a memorandum prepared by HUD explaining the rights and responsibilities of the landlord and tenant, *see* 42 U.S.C. § 1437f(*o* )(7)(F). Once the PHA approves the lease, the PHA then enters into a housing assistance payment agreement with the landlord, whereby the PHA arranges to pay the difference between the participant's base rental payment and the actual rent for the housing unit.

When a family is selected to participate in the HCVP program, the PHA is required to "give the family an oral briefing" to explain family and owner responsibilities. 24 C.F.R. § 982.301(a). The PHA must also provide the family with an information packet setting forth, inter alia, "[f]amily obligations under the program," and explaining the right of a participant to request an informal hearing before the PHA to challenge certain PHA actions and how and when that right may be exercised. 24 C.F.R. § 982.301(b).

Pursuant to the statute and HUD regulation, participants in the HCVP must meet, at the outset and on an ongoing basis, specified family obligations. *See* 24 C.F.R. § 982.551. Two of those obligations are relevant to the present case: Pursuant to 24 C.F.R. § 982.551(d) participants are required to allow the PHA to inspect the unit on an annual basis to ensure that the unit meets housing quality standards, *see also* 42 U.S.C. § 1437f(*o* )(8)(D) (requiring PHAs to conduct annual inspections); and pursuant to 24 C.F.R. § 982.551(b), participants are obligated to provide "true and complete" information as required by the PHA and HUD, including "family income and composition."

Part 24 C.F.R. § 982.552(c)(1) lists the grounds upon which a PHA may terminate program assistance. That regulation provides:

The PHA may at any time deny program assistance for an applicant, or terminate program assistance for a participant, for any of the following grounds:

(i) If the family violates any family obligations under the program (see § 982.551). See § 982.553 concerning denial or termination of assistance for crime by family members.

*         *         *

(v) If the family currently owes rent or other amounts to the PHA or to another PHA in connection with Section 8 or public housing assistance under the 1937 Act.

*         *         *

(vii) If the family breaches an agreement with the PHA to pay amounts owed to a PHA, or amounts paid to an owner by a PHA. (The PHA, at its discretion, may offer a family the opportunity to enter an agreement to pay amounts owed to a PHA or amounts paid to an owner by a PHA. The PHA may prescribe the terms of the agreement.)

24 C.F.R. § 982.552(c)(1).

*The requirement of a pre-termination hearing*

24 C.F.R. § 982.555(a)(1) provides that, prior to making a determination to terminate assistance, "a PHA must give a participant family an opportunity for an informal hearing to consider whether the [ ] PHA decision[ ] . . . [is] in accordance with the law, HUD regulations and PHA policies. . . ." Part 24 C.F.R. § 982.555(e) directs the PHA to establish procedures for conducting informal hearings and provides a general framework for conducting the proceeding. The regulation provides the following: Prior to the hearing, the participant must be given the opportunity to examine all relevant PHA documents. *Id.* At the hearing, the participant, at his or her own expense, is entitled to legal representation. *Id.* The PHA may appoint "any person" to serve as the hearing officer for the hearing, so long as that person is not the person "who made or approved the decision under review or a subordinate of this person." *Id.* Although there are no formal evidentiary rules at the hearing, both the PHA and the participant have the opportunity to "present evidence, and may question any witnesses." *Id.* The regulation requires all factual determinations to be made by a preponderance of the evidence standard, and it directs the hearing officer to "issue a written decision, stating briefly the reasons for the decision." *Id.*

*Maryland's PHA*

The Maryland Department of Housing and Community Development is the PHA responsible for administering the HCVP program in Wicomico County, Maryland.[3] As required

---

**3.** The Department acts as the PHA in the jurisdictions of Maryland that either lack the legislative authority to create a public housing authority,

by the federal statute and HUD regulations, the Department has adopted an Administrative Plan governing the administration of the HCVP program.[4] Consistent with the various HUD regulations discussed above, the Administrative Plan provides for, inter alia, the possible termination of a participant's assistance payments for failing to comply with family obligations, failing to provide an accurate report of family income, and failing to repay the Department for any overpayments. Also consistent in all material aspects with HUD regulations, the Administrative Plan provides that, prior to the termination of a participant's housing assistance benefits, the participant must be given an opportunity for an informal hearing. In accordance with 24 C.F.R. 982.555(e), the Administrative Plan specifies the rights afforded to a participant at the informal hearing and how that informal hearing is to be conducted.

---

*see* Md.Code (2005, 2006), § 12–203 of the Housing and Community Development Article ("HCD") (stating that the formation of a housing authority requires that (1) an article of organization be "recommended in writing by the chief elected official, adopted by a resolution or ordinance of the legislative body, and filed with the Secretary of State" and (2) the Secretary of State has issued a certificate of organization), or otherwise do not administer an HCVP program. Though Wicomico County has established a housing authority, the county presumably has decided not to administer the HCVP program. It is for this reason that the Department, specifically the Community Development Division, *see* HCD §§ 4–205 and 4–211(a)(8)(i)–(ii), administers the HCVP program in Wicomico County.

4. The Department's Administrative Plan does not appear in the Code of Maryland Regulations. The parties have included several excerpts pertinent to the case before us. HCD § 2–111, entitled "Regulations," provides in relevant part that "[t]he Secretary [head of the Department] shall review and may approve, disapprove, or revise the regulations of each governmental unit in the Department." The Department is composed of the following divisions: the Division of Credit and Assurance, the Division of Development Finance, the Division of Neighborhood Revitalization, the Community Development Administration, the Community Legacy Program, the Housing Finance Review Committee, the Lead Hazard Advisory Committee, the Maryland Housing Fund, the Neighborhood Business Development Program, and "any other governmental unit that under law is a part of the Department." HCD §§ 2–201.

## II.

This litigation arises out of Appellant's alleged failure to comply with her family obligations, as required by the Administrative Plan and HUD regulations. In 2009, Appellant resided with her four children in a house she rented in Salisbury, Maryland. Because Appellant was at the time an HCVP participant, her rental payments were supplemented by payments made directly from the Department to Mary Anne Johnson, the property manager of Appellant's rental unit. The Department, alleging that Appellant was in violation of her family obligations, notified Appellant that her rental assistance payments were being terminated. As a result of the termination, Appellant requested and was given an informal hearing to appeal the termination decision, as required by the Administrative Plan and HUD regulations. On August 27, 2009, that hearing was held at the office of Joy Chestnutt, a local property manager appointed by the Department to serve as the hearing officer.

### The Hearing

Ms. Chestnutt (hereinafter, "the hearing officer") took testimony from Ms. Barbara Bialk, a housing subsidy officer representing the Department, and from Appellant and her father, Avery Walker. The hearing officer also received certain documentary evidence from the Department and Appellant. Given the purely legal question we decide, it is unnecessary to discuss all that occurred at the hearing. It is sufficient to note the following.

The Department's theory for terminating Appellant's participation in the program was that she had violated her HCVP family obligations in two ways: she failed on multiple occasions to make her home available for inspection, as required by 24 C.F.R. § 982.551(d), and she failed to enter into a repayment agreement to compensate the Department for alleged overpayments, as she was required to do by the Administrative Plan and 24 C.F.R. § 982.552(c)(1)(vii). According to the Department, the overpayment resulted from Appellant's failure to report to the Department that she was receiving Social Security benefits on behalf of her children.

The Department further alleged that Appellant failed to take any corrective actions to satisfy her family obligations, despite the Department's numerous letters to Appellant warning her of the need to do so in order to avoid termination of her HCVP benefits. Those letters included a June 8, 2009 "Termination of Assistance Notification" letter indicating that Appellant's HCVP participation was being terminated effective July 31, 2009. The letter stated that the grounds for termination were Appellant's failure to enter into a repayment agreement and to allow inspection of the assisted unit. The letter also notified Appellant that "[y]ou have a right to appeal this decision. To appeal, you must file a written request for an informal hearing sent to [the Department] no later than fourteen (14) days from the postmark on this notice."

Appellant presented to the hearing officer a different version of events that led to the Department's terminating her from the program. With regard to her alleged failure to make her home available for inspection, Appellant argued that she had notified the Department that the inspector failed to show up for one of the scheduled re-inspections and that a family medical emergency necessitated her missing the second of the scheduled re-inspections. As for the failure to report the change in income, Appellant denied receiving notice from the Department directing her to arrange for a repayment plan and, when she noticed an increase in her rental payments, she believed that she had begun repayment of the overpayment.

Appellant also denied receiving the June 8 "Termination of Assistance Notification," and alleged that she only learned from her father of the termination of her benefits on or about August 11, 2009, after her father had been informed by the property manager, Ms. Johnson, of the termination. Appellant presented to the hearing officer a letter from Ms. Johnson. Ms. Johnson wrote that the property management company did not receive the June 8 letter, and, according to Ms. Johnson, she learned of the termination only after she noticed that the rental assistance payments from the Department had ceased.

On September 3, 2009, the hearing officer issued a written decision, summarizing the aforementioned evidence, but making no findings of fact. The decision includes the hearing officer's conclusion, without elaboration, that "[t]he testimony and evidence in this matter indicates that the decision of the [Department] should be upheld."

*Petition for Judicial Review*

On September 28, 2009, Appellant filed in the Circuit Court for Wicomico County a petition for judicial review pursuant to SG § 10–222. The Department moved to dismiss the petition.[5] The Department relied on Maryland Rule 7–201(a), which provides: "The rules in this Chapter govern actions for judicial review of (1) an order or action of an administrative agency, where judicial review is authorized by statute...." The Department argued that its decision to terminate Appellant from the program would be subject to judicial review only if authorized by statute, and there is no such authority. The Department further relied on SG § 10–202(d), which describes what is, and what is not, a "contested case." The Department argued that the informal hearing conducted pursuant to 24 C.F.R. § 982.555 does not come within the definition of a "contested case" as set forth in Maryland's Administrative Procedure Act (hereinafter, the "APA"), for which judicial review is available. *See* SG § 10–222(a)(1) (providing that, "[e]xcept as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section").[6]

SG § 10–202(d) sets forth the following definition for "contested case":

---

**5.** The Department has also moved to dismiss the case before this Court. For reasons that will become evident, we deny that motion.

**6.** SG § 10–222 more fully provides, in relevant part:

(a) *Review of final decision.*—(1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a

(d) *Contested Case.*—(1) "Contested case" means a proceeding before an agency to determine:

(i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing; or

(ii) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by statute or constitution to be determined only after an opportunity for an agency hearing.

(2) "Contested case" does not include a proceeding before an agency involving an agency hearing required only by regulation unless the regulation expressly, or by clear implication, requires the hearing to be held in accordance with this subtitle.

In the Department's view, there is no statute or provision of the Constitution that requires a contested case hearing prior to the termination of HCVP participation, making SG § 10–202(d)(1) inapplicable; instead, the sole right to a hearing comes from HUD regulations, specifically the right to the informal hearing set forth in 24 C.F.R. § 982.555. According to the Department, SG § 10–202(d)(2) is therefore applicable,

---

contested case is entitled to judicial review of the decision as provided in this section.

(2) An agency, including an agency that has delegated a contested case to the Office [of Administrative Hearings], is entitled to judicial review of a decision as provided in this section if the agency was a party before the agency or the Office.

(b) Review of interlocutory order.—Where the presiding officer has final decision-making authority, a person in a contested case who is aggrieved by an interlocutory order is entitled to judicial review if:

(1) the party would qualify under this section for judicial review of any related final decision;

(2) the interlocutory order:

(i) determines rights and liabilities; and

(ii) has immediate legal consequences; and

(3) postponement of judicial review would result in irreparable harm.

(c) Jurisdiction and venue.—Unless otherwise required by statute, a petition for judicial review shall be filed with the circuit court for the county where any party resides or has a principal place of business.

and, because 24 C.F.R. § 982.555 does not indicate either expressly or by clear implication that the informal hearing is to be treated as a contested case, it is not one.

Appellant disagreed. Appellant argued in her Reply Memorandum, and later during oral argument before the Circuit Court, that 24 C.F.R. § 982.555 is not the only source of a right to a hearing prior to an HCVP termination decision. Appellant asserted that the pre-termination hearing, in addition to being required by the federal regulation, is also dictated by the Due Process Clause of the federal Constitution, thereby satisfying the definition of a "contested case" set forth in SG § 10–202(d)(1)(i). Appellant continued that, as a contested case, the hearing was required to be held according to the procedures set forth in Subtitle 2 of SG § 10 and, because it was not, a remand to the Department for a proper hearing was required.

The Circuit Court, after hearing from the parties in open court, issued a written Opinion and Order agreeing with the Department. The court, unpersuaded by Appellant's argument, found that "the hearing held by the [Department] was ... required only be regulation, 24 C.F.R. § 982.555(a)(v)" and therefore the "matter is not a 'contested case' under Maryland's statutory definition and [ ] the APA requirements do not apply." The court nonetheless went on to find that there was substantial evidence in the record to support the Department's termination decision.

### The Appeal

On May 12, 2010, Appellant noted an appeal to the Court of Special Appeals. Prior to argument before the Court of Special Appeals, we, on our initiative, issued a writ of certiorari to consider the following questions:

1. Does the Maryland Administrative Procedure Act govern hearings concerning terminations of rental assistance to participants in the Housing Choice Voucher Program administered by the Department?

2. Did the Department comply with Maryland's Administrative Procedure Act?

For the reasons that follow, we hold that the Department, upon receipt of Appellant's challenge to the pending termination decision, was required to provide her a contested case hearing before terminating her housing benefits. We further hold that the informal hearing was not held in accordance with the contested case procedures set forth in the APA.

## III.

### A.

■ We decide first whether the Department is required to hold a "contested case" hearing, as defined by the APA, before terminating the benefits of an HCVP participant who challenges the termination.

SG § 10–202(d)(1), as we have explained, defines "contested case" as including "a proceeding before an agency to determine[ ] (i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing[.]" When a "proceeding" meets the definition of a contested case, the agency is required to provide certain trial-type procedures during the hearing. *See Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal Auth.,* 323 Md. 641, 651, 594 A.2d 1115, 1120 (1991).[7]

The parties are in agreement that the Department is a State agency to which the APA applies. *See* SG § § 10–202,

---

7. The applicable provisions are found in Subtitle 2 of the APA. *See, e.g.,* SG § 10–213 (providing, inter alia, that a party in a contested case may call and cross-examine witnesses, offer evidence, and present summation and argument); SG § 10–214 (requiring that findings of fact "must be based exclusively on the evidence of record in the contested case proceeding and on matters officially noticed in that proceeding"); SG § 10–218 (stating that the "presiding officer hearing a contested case shall make a record" that includes, inter alia, all motions and pleadings, all documentary evidence, and each finding of fact and conclusion of law); SG § 10–219 (providing that a "presiding officer may not communicate ex parte directly or indirectly regarding the merits of any issue in the case, while the case is pending," with "any party to the case or the party's representative or attorney"); SG § 10–221 (requiring a final decision in a contested case to "contain separate statements of"

10–203. Termination of HCVP benefits, moreover, constitutes a "right, duty, statutory entitlement, or privilege" as set forth in the definition of "contested case." SG § 10–202(d)(1). The parties dispute, however, whether a statute or constitutional principle requires that a decision regarding termination of HCVP benefits be made only after "an opportunity for an agency hearing."

█ It is a well-established principle of Maryland administrative law that the APA itself does not grant a right to an administrative hearing. Rather, the right must come from another source, such as a statute, due process principles, or a regulation. *See Carven v. State Retirement & Pension System of Maryland,* 416 Md. 389, 410, 7 A.3d 38, 51 (2010); *Sugarloaf,* 323 Md. at 652, 594 A.2d at 1120.

Appellant makes no claim that a statute grants her the right to an administrative hearing. Appellant contends, instead, that federal due process principles entitle her to a pre-termination hearing. Appellant relies on *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

In *Goldberg,* the Supreme Court held that termination of welfare benefits without first affording the recipient an opportunity for an evidentiary hearing violates the Due Process Clause of the Fourteenth Amendment. The *Goldberg* Court held that Due Process requires that, prior to termination of public assistance benefits, the welfare recipient must be given "timely and adequate notice detailing the reasons for a proposed termination," and, at the hearing, the recipient must be given "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg,* 397 U.S. at 267–68, 90 S.Ct. 1011. The Supreme Court reasoned that the interests of the participant in the "uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously

---

the findings of fact and conclusions of law); SG § 10–222 (providing that "a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section").

terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens." *Id.* at 266, 90 S.Ct. 1011.

That same reasoning applies with equal force to HCVP benefits, because participants rely on the rental assistance payments to meet "their basic need for housing." *Basco v. Machin,* 514 F.3d 1177, 1182 n. 7 (11 th Cir.2008). *See also Davis v. Mansfield Metro. Hous. Auth.,* 751 F.2d 180, 185 (6th Cir.1984) (same). The Department implicitly concedes, by not arguing the contrary, that the Due Process Clause requires an evidentiary hearing prior to the termination of HCVP benefits. And indeed, the informal hearing framework set forth in 24 C.F.R. § 982.555 meets *Goldberg's* due process requirements. *Compare* 24 C.F.R. § 982.555(c)(1) (providing that the recipient may request a hearing to challenge termination if he or she "does not agree with the [initial] determination") *with Goldberg,* 397 U.S. at 267, 90 S.Ct. 1011 (requiring that the recipient be given the opportunity of a pre-termination hearing "to protect a recipient against an erroneous termination of his benefits"); *compare* 24 C.F.R. § 982.555(c)(2) (providing that the PHA is required to give "prompt written notice" of the proposed termination containing "a brief statement of reasons") *with Goldberg,* 397 U.S. at 267–68, 90 S.Ct. 1011 (stating that recipient must receive "timely and adequate notice detailing the reasons for a proposed termination"); *compare* 24 C.F.R. § 982.555(e)(5) (specifying that the recipient "must be given the opportunity to present evidence, and may question any witnesses") *with Goldberg,* 397 U.S. at 268, 90 S.Ct. 1011 (explaining that the recipient must be given an "effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally").[8]

As the Department acknowledges in its brief, courts throughout the country have rejected due process challenges

---

8. Indeed, HUD itself explicitly acknowledges that the pre-termination hearing must meet, at a minimum, the requirements of due process. *See* Section 8 Certificate Program, Moderate Rehabilitation Program

to the informal hearing procedures set forth in 24 C.F.R. § 982.555 precisely because the procedures meet the requirements of *Goldberg* and its progeny. *See generally Hunter v. Underwood,* 362 F.3d 468 (8th Cir.2004); *Ritter v. Cecil County Office of Hous. & Cmty. Dev.,* 33 F.3d 323 (4th Cir.1994). It is clear, then, that the Due Process Clause—and not the relevant federal regulations alone—requires, upon request, a hearing prior to the termination of HCVP benefits. We thus must decide whether the due process requirement of a hearing prior to termination of HCVP benefits renders those hearings "contested cases" for purposes of the Maryland APA.[9]

### B.

*Right to a pre-termination hearing is not required "only by regulation"*

The Department first relies on SG § 10–202(d)(2) in arguing why the pre-termination hearing is not a contested case.

---

and Housing Voucher Program, 55 Fed.Reg. 28,538 (July 11, 1990) (explaining that "PHAs must adopt written informal pre-termination hearing procedures for participants, which fully meet requirements of *Goldberg v. Kelly* ").

**9.** The Department contends that the informal "hearing procedures in question are federally mandated, and therefore binding and controlling on this State, through the Supremacy Clause, U.S. Const. art. VI, ¶ 2." Thus, so long as the "hearing afforded complies with federal law," i.e., 24 C.F.R. 982.555, argues the Department, Appellant "has no basis for complaint" because it is beyond question that the federal regulation complies with due process requirements. Though it may seem that the Department is making a preemption argument, it in fact is not. The Department does not argue explicitly that preemption applies in its brief; in fact, the Department conceded before the Circuit Court that preemption was not an issue (stating that "there is no preemption issue."). We agree. *See Glenmont Hills Assocs.,* 402 Md. at 266–75, 936 A.2d at 334–39 (explaining that local housing anti-discrimination laws were not preempted by the HCVP and related regulations; explaining that the HCVP "is clearly not an exclusively Federal program in which the States were intended to have no role."). There is nothing in the federal statute or accompanying regulations that prohibits a PHA from providing procedures beyond those that are required by due process at the pre-termination hearing. *See, e.g.,* 24 C.F.R. § 982.53(d) ("Nothing in part 982 is intended to pre-empt operation of state or local laws.").

Once again, SG § 10–202(d)(2) provides: " 'Contested case' does not include a proceeding before an agency involving an agency hearing required *only by regulation* unless the regulation expressly, or by clear implication, requires the hearing to be held in accordance with this subtitle." (Emphasis added.) The Department argues that a pre-termination proceeding is not a contested case because the "informal hearing" is required by regulation (i.e., 24 C.F.R. § 982.555). Appellant responds, as she did before the Circuit Court, that the right to a pre-termination hearing emanates not "only" from the federal regulation, but also from the Due Process Clause, thereby making SG § 10–202(d)(2) inapplicable.

■ The plain language of SG § 10–202(d)(2) demonstrates why the Department's argument fails.[10] That provision exempts from contested case treatment a hearing that is "required *only* by regulation" (absent language in the regulation indicating that it is to be treated as a contested case). In other words, subsection (d)(2) is applicable only when neither a statute nor a constitutional principle—e.g., due process—requires a hearing prior to certain agency action. Put another way, the only way for the Department to prevail on this point is if we read out the word "only" from SG § 10–202(d)(2), such

---

**10.** Resolution of this question involves statutory interpretation, the rules of which we recently reiterated in *Headen v. Motor Vehicle Admin.*, 418 Md. 559, 569, 16 A.3d 196, 202 (2011):

Under the rules of construction, "we neither add nor delete language so as to reflect an intent not evidenced in the plain language of the statute; nor [do we] construe the statute with forced or subtle interpretations that limit or extend its application." *Lonaconing Trap Club, Inc. v. Md. Dept. of the Env't*, 410 Md. 326, 339, 978 A.2d 702, 709 (2009) (internal quotation and citation marks omitted). We must " 'read a statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " *Della Ratta v. Dyas*, 414 Md. 556, 570, 996 A.2d 382, 390 (2010) (quoting *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 275, 983 A.2d 138, 153 (2009)). "The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 577, 870 A.2d 186, 193 (2005).

that it would read in relevant part: " 'Contested case' does not include a proceeding before an agency involving an agency hearing required by regulation. . . ." That, of course, is untenable. We are obliged to enforce the plain language of a statutory provision and must "neither add nor delete language so as to reflect an intent not evidenced in the plain language of the statute. . . ." *Headen v. Motor Vehicle Admin.*, 418 Md. 559, 569, 16 A.3d 196, 202 (2011) (internal quotation marks and citation omitted).

The legislative history of SG § 10–202(d)(2) does not convince us to the contrary. To understand the history of that subsection, we must first review *Sugarloaf,* 323 Md. 641, 594 A.2d 1115, the issuance of which precipitated the enactment of subsection (d)(2). In that case, we construed a statute that employed the term "public hearing" as contemplating a contested case hearing. In response to *Sugarloaf,* the Governor formed a Commission to Revise the Administrative Procedure Act and charged the Commission with "assess[ing] and respond[ing] to complaints that the *Sugarloaf* decision had resulted in an unexpected and unwarranted expansion of the situations to which contested case hearings were applicable." The Commission recommended the addition of § 10–202(d)(2) to "clarify which activities of State government do not fall under the provisions of the [APA]."

The General Assembly adopted the recommended provision in 1993. The Bill Analysis of HB 877 (which became subsection (d)(2)) states that the amendment "makes clear that a public hearing that is required by regulation or statute before an agency takes a particular action need not take the form of a 'contested case' proceeding, with its accompanying evidentiary, discovery, and other elaborate procedural rules, unless the regulation or statute expressly or by clear implication requires otherwise." Because the legislative history of § 10–202(d)(2) suggests that the intent behind revision of the APA was to avoid a situation where a hearing required by regulation automatically triggered the APA, and because Appellant's hearing was required by federal regulation, the Department asserts that this legislative history supports its argument that

§ 10–202(d)(2) excludes from the definition of "contested case" the hearing at issue here.

We are somewhat perplexed by the Department's insistence that the legislative history of (d)(2) supports its interpretation of that subsection. The Department's assessment indicates that the addition of subsection (d)(2) was motivated by concerns not at all at issue here—mainly, this Court's suggestion in *Sugarloaf* that the term "public hearing" as used in the statute at issue in that case contemplated a "contested case." Indeed, the Bill Analysis of House Bill 877 says nothing regarding the issue in the case *sub judice*, which involves a situation where both a regulation and due process principles require a hearing prior to agency action.

In sum, the Due Process Clause of the Fourteenth Amendment requires that an HCVP participant be given the opportunity for a hearing prior to the termination of HCVP benefits. Consequently, the hearing is not required *"only* by regulation," as would be necessary for application of SG § 10–202(d)(2) (describing what "contested case" does not include). We therefore must focus our attention on subsection (d)(1), to ascertain whether the pre-termination hearing meets the definition in that subsection of a "contested case."

### Contested Case?

The Department's remaining argument for why the pre-termination hearing is not a contested case confuses a constitutional analysis with one that, at bottom, is one of statutory interpretation. Essentially, the Department argues that, because due process requires no more than an informal hearing prior to termination of HCVP benefits—and indeed the federal regulations explicitly characterize the pre-termination hearing as "informal"—the hearing is not a contested case for which the full trial-type procedures are applicable.

Appellant disagrees. Appellant contends that, because the pre-termination hearing prescribed by 24 C.F.R. § 982.555 is also required by the Constitution, the hearing comes within the SG § 10–202(d)(1) definition of a contested case, i.e., an

agency proceeding at which, inter alia, a statutory entitlement that is "required by statute or constitution to be determined only after an opportunity for a hearing."

The leading case on this issue is *Sugarloaf*. The question decided in *Sugarloaf* was whether the Maryland Air Management Administration of the Maryland Department of the Environment was required to hold a contested case hearing before ruling on an application for a Prevention of Significant Deterioration (PSD) permit [11] related to the process of building a Municipal solid waste incinerator. 323 Md. at 651, 594 A.2d at 1119–20.

The Northeast Maryland Disposal Authority had proposed to construct a municipal solid waste incinerator near Sugarloaf Mountain. The first step in the process was for the Disposal Authority to obtain a PSD permit, which would then be followed by obtaining a construction permit and, finally, an operation permit. Concerned citizens (plaintiffs) living in the area requested that the Air Management Administration ("Agency") hold an "adjudicatory hearing" prior to ruling on the permit. After the Agency denied the request, indicating that it instead would hold a "public hearing at which interested persons could make comments," the plaintiffs filed in the Circuit Court for Montgomery County a complaint for declaratory judgment. The plaintiffs asked the court to declare that the Agency must hold a contested case hearing prior to final action on the PSD permit. *Id.* at 648–49, 594 A.2d at 1118–19.

The Circuit Court granted summary judgment in favor of the Agency, finding that a contested case hearing during the PSD permit process was not required by statute, regulation, or due process. Prior to argument in the Court of Special Appeals, we granted the Agency's petition for writ of certiorari and the plaintiffs' cross-petition to review the Circuit Court's order. *Id.* at 650, 594 A.2d at 1119.

---

11. The permit process was intended to prevent the degradation of ambient air quality.

The *Sugarloaf* plaintiffs, unlike Appellant here, made no argument that they had a due process right to a contested case hearing at the PSD permit stage. *Id.* at 653 n. 8, 594 A.2d at 1121 n. 8. Instead, the *Sugarloaf* plaintiffs contended that Maryland Code (1982, 1987 Repl.Vol.), § 2–404 of the Environment Article ("Env't Art.") and COMAR 26.11.02.10C obligated the Agency to provide a contested case hearing prior to PSD permit approval. 323 Md. at 653, 594 A.2d at 1121.

We disagreed with the plaintiffs, explaining that the "statute or regulation which grants the right to a hearing may negate the fact that the hearing is to be a 'contested case' or 'adjudicatory' hearing." *Id.* at 653, 594 A.2d at 1120. We rejected outright Env't Art. § 2–404 as a basis for a contested case hearing at the PSD permit stage. We reasoned, based on the language of that provision, that it was not until the construction permit stage that the statute provides the right to a "public hearing," which we construed to mean a contested case hearing.[12] *Id.* at 656, 594 A.2d at 1122.

With regard COMAR 26.11.02.10C, we found important the portion of it authorizing the Agency to implement the hearing procedures used by the Environmental Protection Agency in PSD proceedings at the federal level. We noted that the federal regulation, in turn, provided for "non-trial type public notice and comment hearings" and specified that PSD permits "may never be subject to an 'evidentiary hearing.'" *Id.* at 655, 594 A.2d at 1122. That language, we explained, clearly evinced an intent by the Environmental Protection Agency that the hearing *not* be treated as a contested case. *Id.*, 594 A.2d at 1122. We concluded that, by giving the Agency the option to employ those federal procedures, Maryland had shown a "similar intent" that the PSD permit hearing not be a contested case. *Id.*, 594 A.2d at 1122. Accordingly, we held that the COMAR regulation—i.e., the source of the right to a

---

**12.** .It was in response to this aspect of our decision in *Sugarloaf* that the General Assembly enacted SG § 10–202(d)(2). *See supra* pages 97–98, 29 A.3d at 303–04.

hearing—did not contemplate a contested case hearing. *Id.* at 659, 594 A.2d at 1124.

It is this analysis in *Sugarloaf* from which the Department crafts its argument that "the statute or regulation which grants the right to a hearing, or due process principles themselves, may negate the fact that the hearing is to be a 'contested case' hearing." In other words, the Department argues that, because due process does not require a contested case hearing prior to termination of HCVP benefits, the hearing does not come with the definition of "contested case." The Department, however, overlooks a key aspect of our analysis in *Sugarloaf.*

Subsequent to the filing of our initial opinion in *Sugarloaf,* the Agency filed a motion for reconsideration. *Id.* at 659, 594 A.2d at 1124. The Agency argued that we had erroneously interpreted Env't Art. § 2–404 to provide for a contested case hearing at the construction permit stage. Specifically, the Agency contended that the hearing provided for in Env't Art. § 2–404 at the construction permit stage is not a contested case because the "word 'public' is used in the statute[ ] providing for [the] hearing[ ] and that the administrative practice has not been to treat the hearing[ ] as [a] contested case. . . ." *Id.* at 663, 594 A.2d at 1126.

In reaffirming our interpretation of that statutory provision, we explained:

Under Maryland administrative law, where a statute, regulation or due process principles provide that a particular administrative function be done after an agency hearing, it is the definition in the Administrative Procedure Act, and not the statute dealing with the underlying administrative function, which ordinarily determines whether the hearing is a "contested case" hearing. In other words, where a statute . . . requires an opportunity for an agency hearing prior to the issuance of a construction permit, the question whether such hearing is a "contested case" hearing ordinarily depends upon applying the definition of "contested case" in the Administrative Procedure Act to the agency activity, and

not upon whether [the statute] uses language indicating that the hearing is "adjudicatory." Otherwise, the definition of contested case in the Administrative Procedure Act ... would be superfluous.

*Id.* at 663, 594 A.2d at 1126. Because Env't Art. § 2–404 required a hearing prior to issuance of the construction permit, and "[n]othing in the scheme expressly or by implication negates a contested case hearing," we reaffirmed in *Sugarloaf* our earlier conclusion that the hearing is a contested case hearing. 323 Md. at 666, 594 A.2d at 1127.[13]

This analysis applies with equal force to refute the Department's contention that the source of the HCVP benefits termination hearing "negates the fact" that the hearing is a contested case. Put differently, though due process requires an informal HCVP hearing, the somewhat limited rights (as compared to those provided at a contested case hearing) afforded a participant by due process do not constitute the "express[ ] or clear implication" necessary to negate treatment of the hearing as a contested case under Maryland's APA. *See Sugarloaf,* 323 Md. at 665–66 n. 6, 594 A.2d at 1127 n. 6. In the absence of the requisite evidence of negation, *see, e.g., Angell v. Henneberry,* 92 Md.App. 279, 303, 607 A.2d 590, 602 (1992) (holding that the procedures required by due process attendant at inmate transfer hearings were so limited as to constitute the express or implied negation required by *Sugarloaf*), once due process or a statute requires a hearing prior to certain agency action, it is the definition of contested case found within the APA that is controlling. Otherwise, as we

---

**13.** We took care to emphasize that the "statute or regulation which grants the opportunity for a hearing may negate the fact that the hearing is to be a contested case hearing." *Sugarloaf,* 323 Md. at 665–66 n. 6, 594 A.2d at 1127 n. 6. We cautioned, though, that the "statute or regulation which provides for a hearing should not be construed to override the definition in the Administrative Procedure Act unless the statute or regulation does so expressly or by clear implication. To do otherwise would be to ignore the definition in the Administrative Procedure Act and treat [the definition] as surplusage." *Id.,* at 665 n. 6, 594 A.2d at 1127 n. 6.

explained in *Sugarloaf*, we would render nugatory and surplusage the contested case definition.

Two of our sister states have held similarly. In *Bouie v. New Jersey Department of Community Affairs*, 407 N.J.Super. 518, 972 A.2d 401 (2009), the New Jersey intermediate appellate court held, inter alia, that the HCVP benefits termination hearing required by federal law was a "contested case" under the New Jersey APA.[14] Codified at N.J.S.A. 52:14B-2(b), the New Jersey APA defines a "contested case" as "a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing . . . ."

The *Bouie* court began by noting that the New Jersey APA (much like Maryland's APA, *see Carven*, 416 Md. at 410, 7 A.3d at 51) does not create a substantive right to an administrative hearing. *Bouie*, 972 A.2d at 412. Instead, just as in Maryland, the right to an administrative hearing must flow from another statute or constitutional provision. *Id.* (citation omitted). The *Bouie* court then explained that, in the context of housing benefits, the right to an administrative hearing emanates not from a statute, but instead from the Due Process Clause of Fourteenth Amendment. The court noted that, for this reason, 24 C.F.R. § 982.555 provides for an informal hearing at which certain procedures—those required by *Goldberg*—are guaranteed to a participant. *Id.* at 409. Because the protections afforded participants were dictated by

---

14. The Department of Community Affairs ("DCA"), the PHA in New Jersey, conceded that a challenge of "the Section 8 benefits termination at bar is a 'contested case'" because "the DCA's initial decision to terminate [appellant's] participation in the Section 8 housing program involves the loss of a property interest that affords appellant the constitutional right to a due process hearing." *Bouie v. N.J. Dept. of Community Affairs*, 407 N.J.Super. 518, 972 A.2d 401, 411 (2009).

the Constitution, the court concluded that the termination hearing was a contested case under the New Jersey APA.

To like effect is *Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 522 P.2d 1255 (1974). In that case, the Supreme Court of Hawaii confronted an issue identical to the case *sub judice.* At that time, the Hawaii APA defined a "contested case" as "a proceeding in which the legal rights, duties or privileges of specific parties are required by law to be determined after an opportunity for [an] agency hearing." *Id.* at 1267. Relying on *Goldberg* for the proposition that "the plaintiffs' interest in continuing to receive the statutory benefit of low-cost housing—and hence in resisting erroneous rent increases—is a 'property' interest for due process purposes[,]" the Court held that the assistance could only be terminated after an opportunity for a hearing. *Id.* at 1267. Accordingly, the court held that the proceeding was a contested case under the Hawaii APA, for which all of the attendant procedures applied.

We agree with our sister jurisdictions. Pursuant to *Goldberg,* the Due Process Clause requires that HCVP participants be given an opportunity for an informal hearing prior to termination of benefits. Absent the express or clearly implied evidence of negation required by *Sugarloaf,* we hold, much like the *Bowie* and *Aguiar* courts, that HCVP benefits termination hearings are contested cases under the APA.

## C.

*Was the HCVP benefits termination hearing held in accordance with the contested case requirements?*

■ Our remaining task is to determine whether the procedures afforded Appellant at her HCVP benefits termination hearing were in accordance with those procedures required of contested cases, as set forth in Subtitle 2 of SG Title 10. Appellant argues that the hearing and the decision issued failed to comply with the APA because the findings of fact and

conclusions of law were inadequate and the hearing examiner failed to construct an adequate record.

SG § 10–221, entitled "Final decisions and orders[,]" provides in relevant part:

(a) *Form.*—A final decision or order in a contested case that is adverse to a party shall be in writing or stated on the record.

(b) *Contents.*—(1) A final decision or order in a contested case, including a remand of a proposed decision, shall contain separate statements of:

    (i) the findings of fact;

    (ii) the conclusions of law; and

    (iii) the order.

(2) A written statement of appeal rights shall be included with the decision.

(3) If the findings of fact are stated in statutory language, the final decision shall state concisely and explicitly the facts that support the findings.

(4) If, in accordance with regulations, a party submitted proposed findings of fact, the final decision shall state a ruling on each proposed finding.

Appellant complains that the hearing officer's decision lacks the findings of fact and conclusions of law mandated by SG § § 10–220 and 10–221. Appellant specifies that the hearing officer neither articulated her reasoning nor set out the facts as she found them, and "simply paraphrased the evidence offered by each party and concluded that 'the testimony and evidence in this matter indicate[ ] that the decision of the local housing authority should be upheld.' "

The hearing officer's written findings consist of a summary of the Department's "position," as presented by Ms. Bialk, followed by a summary of Appellant's "position," as presented by Appellant and her father, Mr. Walker. Following that narrative account of the evidence is the hearing officer's decision, which reads in its entirety as follows:

*Decision*

The Hearing Officer is responsible for determining whether the action or decision of the Local Housing Authority is in accordance with HUD regulations and the agency Administrative Plan based upon the preponderance of evidence and testimony provided at the hearing.

The testimony and evidence in this matter indicates that the decision of the Local Housing Authority should be upheld.

This does not come close to the findings required by SG § 10–221. We have explained time and time again, "not only the importance but the necessity that administrative agencies resolve all significant conflicts in the evidence and then chronicle, in the record, full, complete and detailed findings of fact and conclusions of law." *Mehrling v. Nationwide Ins. Co.*, 371 Md. 40, 64, 806 A.2d 662, 676 (2002) (quotation marks and citation omitted). At a minimum, "one must be able to discern from the record the facts found, the law applied, and the relationship between the two." *Forman v. Motor Vehicle Admin.*, 332 Md. 201, 221, 630 A.2d 753, 764 (1993). Put differently, the agency must "provide findings of fact on all material issues, and present a clear statement of the rationale for its decision by explaining how it applied the relevant facts to the applicable law." *Mehrling*, 371 Md. at 63 n. 27, 806 A.2d at 675 n. 27 (quoting ARNOLD ROCHVARG, MARYLAND ADMINISTRATIVE LAW § 3.71 at 70 (MICPEL 2001)).

In this regard, *United Steelworkers of America v. Bethlehem Steel Corp.*, 298 Md. 665, 472 A.2d 62 (1984), is instructive. In *Bethlehem*, much like the case before us, the hearing officer (there the Commissioner) narrated the evidence presented at the hearing and, then, without resolving the factual conflicts, concluded that "[t]here was ample evidence offered by [the Maryland Occupational Safety and Health staff] concerning achievable measures that were readily available to [Bethlehem]...." *Id.* at 679, 472 A.2d at 69. We explained that it was "apparent that [the Commissioner] did not resolve conflicts of underlying fact," *id.* at 674, 472 A.2d at 67, and that the Commissioner's conclusion "tells us nothing in relation to [the] record and precludes judicial review," *Id.* at 679, 472 A.2d at 69. We ordered a remand to the agency because

[j]udicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.

*Id.* at 679, 472 A.2d at 69.

The hearing officer's decision in Appellant's case, like that in *Bethlehem,* "fail[s] to resolve conflicts of underlying fact," *Bethlehem,* 298 Md. at 674, 472 A.2d at 67, and "tells us nothing in relation to [the] record and precludes judicial review," *id.* at 679, 472 A.2d at 69. The hearing officer's findings do not make clear, for example, whether Appellant's benefits were terminated for alleged violations of Appellant's family obligations or for her failure to enter into a repayment agreement, or both. Thus, for much the same reasons articulated in *Bethlehem,* judicial review of the decision cannot be conducted on the present record. A remand to the Department for compliance with the dictates of a contested case proceeding is required. At that proceeding, the hearing officer must develop a record, *see* SG § 10–218, that contains the requisite factual findings (including resolution of disputed facts) and a clear statement of the rationale for the decision.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO REMAND TO THE DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT TO BE PAID BY APPELLEE.**

HARRELL and MURPHY, JJ., dissent.

HARRELL, J., dissenting, in which MURPHY, J., joins.

I think it a much closer question than the Majority opinion appears willing to admit whether there is sufficient indicia in the relevant regulatory scheme here that negates, expressly or by implication, the notion that a contested case administrative hearing process is required in Maryland in termination of Section 8 housing benefits situations.  Because I am inclined to the view that there is sufficient indicia of negation here, I dissent.

As the Majority opinion notes, 24 C.F.R. § 982.555(a)(1) provides that a state public housing agency ("PHA") "must give a participant family an opportunity for an *informal hearing* to consider whether the . . . PHA decision . . . [is] in accordance with the law, HUD regulations and PHA policies. . . ." Majority op. at 85, 29 A.3d at 296 (emphasis added).  The Majority opinion proceeds to describe the procedures for conducting such "informal hearings," Majority op. at 85, 29 A.3d at 296, which the Maryland PHA Administrative Plan and hearing officer Chestnut carried-out apparently in this case.  Majority op. at 87, 29 A.3d at 297.[1]  Moreover, the procedures of 24 C.F.R. § 982.555(e) and Maryland PHA's Administrative Plan comply with federal due process requirements (see Majority op. at 92–95, 29 A.3d at 300–02, discussing *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).  I can find nothing in the relevant statutory or regulatory context that indicates other than that a more formal, trial type contested case hearing (under the Maryland Administrative Procedure Act) is not intended in these situations.  Stated another way, the need or desire for a contested case hearing process was negated.  See Majority op. at 102–03, 29 A.3d at 306–07 and n. 13. Thus, even though a statutory entitlement was at issue in the present case, § 10–202(d)(1) of the State Gov't Art. of the Md.Code does not trump the clear indication from the relevant statutory and regulatory scheme

---

1. The Majority opinion does not contend that the informal hearing accorded Walker in the present case falls shy of the requirements of 24 C.F.R. § 982.555(e) or the State PHA Administrative Plan.

for the administrative resolution of Section 8 housing assistance disputes that only an "informal hearing" is required, such as was given in the present case, *Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal Auth.*, 323 Md. 641, 662–668, 594 A.2d 1115, 1125–1128 (1991), notwithstanding.

I would affirm the judgment of the Circuit Court for Wicomico County.

Judge MURPHY authorizes me to state that he joins the views expressed here.