**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2600-20

IN THE MATTER OF
LYRESHIA BONDS, JUDICIARY,
MIDDLESEX VICINAGE 8.

_____

Submitted May 11, 2022 – Decided July 6, 2022

Before Judges Gilson and Gummer.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-1334.

Desha Jackson, attorney for appellant Lyreshia Bonds.

Matthew J. Platkin, Acting Attorney General, attorney for respondent the Superior Court of New Jersey, Middlesex Vicinage 8 (Sookie Bae-Park, Assistant Attorney General, of counsel; Christine A. Barris, Deputy Attorney General, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Lyreshia Bonds was employed as a probation officer in the Middlesex Vicinage of the Superior Court (Vicinage). After she was suspended without pay effective March 2, 2021, appellant submitted to the Civil Service Commission a request for interim relief from that suspension. In a May 3, 2021 final administrative action, the Commission denied her request. She appeals that denial. Because the Commission's decision is supported by substantial credible evidence, is not arbitrary, capricious, or unreasonable, and did not violate appellant's due-process rights, we affirm.

I.

Appellant began to work as a probation officer for the Vicinage in 2012. She received yearly training on the Code of Conduct for Judiciary Employees (Code) and was required annually to review, acknowledge, and agree to be bound by the Code. Canon 3 of the Code, which is entitled "Avoiding Actual or Apparent Impropriety," provides: "A court employee shall observe high standards of conduct so that the integrity and independence of the courts may be preserved, and shall avoid impropriety or the appearance of impropriety." Canon 4 of the Code, which is entitled "Avoiding Actual or Apparent Conflicts of Interest," states: "Court employees shall regulate outside activities to minimize the risk of conflict with court-related duties. Generally a conflict of

interest exists when the court employee's objective ability or independence of judgment in the performance of his or her job is impaired or reasonably may appear to be impaired."

In 2017, appellant's nephew was the subject of two juvenile-delinquency cases pending in the Family Part of the Chancery Division in the Vicinage. At that time, appellant worked in the Criminal Part of the Law Division. On September 6, 2017, the trial court issued an order finding the Vicinage had venue of the cases and requiring appellant to "refrain from discussing the [cases] with any individuals involved in the case or its processing."

In 2018, appellant's nephew was charged as an adult with various criminal offenses, pending in the Criminal Part in the Vicinage. Appellant submitted to the Vicinage Trial Court Administrator (TCA) a New Jersey Judiciary Personal or Family Involvement in Litigation Confidential Reporting Form. In response, the TCA on January 4, 2019, sent appellant a memorandum instructing her to "refrain from discussing this matter with any individuals involved in the case or its processing. In addition, you shall refrain from accessing the court file(s) or . . . system(s) pertaining to this matter." In an August 29, 2019 email to the Vicinage Criminal Division Manager (CDM), appellant asked for a copy of the September 6, 2017 order. The CDM emailed appellant a copy of the order on

3

September 5, 2019. In a September 10, 2019 email, the CDM sent appellant another copy of the January 4, 2019 memorandum and "reminded [her] that [she was] still required to refrain from discussing this matter and/or accessing related court files and/or our legacy systems, as stated in the memo."

In a September 9, 2019 order regarding a venue motion in one of the criminal cases, the trial court ordered appellant to "refrain from discussing the within matter with any individuals involved in the case or its processing." During a February 3, 2021 hearing in that matter conducted over Zoom, Tyreshia Hailstork, who was appellant's sister and the defendant's mother, testified. Twice while she was testifying, she was unable to answer a question, was heard apparently asking someone off screen a question, received a whispered response, and then answered the question. The judge advised Hailstork she knew she had someone sitting next to her and told her she was not permitted to have that person answer for her. Hailstork responded: "No, she, she, she works for the courts, she just said yes or no, I was gonna say extra stuff, so she said yes or no." Appellant ultimately identified herself as the person sitting with Hailstork. The judge repeatedly advised appellant and Hailstork that appellant could not help Hailstork with her answers and could not direct her how to answer. The judge required appellant to leave the room or to be on camera with Hailstork.

A-2600-20

Appellant chose to be on camera with Hailstork. Despite the judge's instructions, additional whispering was overheard and appellant was seen on camera talking to Hailstork during parts of the hearing.

In a February 26, 2021 memorandum, the CDM advised appellant she was immediately suspended with pay and without pay effective March 2, 2021, because "it is necessary to maintain the order or effective direction of public services," citing N.J.A.C. 4A:2-2.5(a)(1) and (b). The CDM told appellant her "unauthorized active participation in the official court hearing involving [her] nephew . . . , particularly [her] having prompted the witness, [her] sister, . . . while she was testifying under oath in an official court hearing" constituted violations of: N.J.A.C. 4A:2-2.3(a)(2) ("[i]nsubordination"); N.J.A.C. 4A:2-2.3(a)(6) ("[c]onduct unbecoming a public employee"); and N.J.A.C. 4A:2-2.3(a)(12) ("[o]ther sufficient cause") based on her failure to follow Canons 3 and 4 of the Code and the directives contained in the September 6, 2017 and September 9, 2019 orders and the January 4, 2019 memorandum. The CDM also advised her the Vicinage intended to "seek major discipline based on these charges and specifications" and of her right to respond to her suspension.

A union lawyer responded on appellant's behalf, contending an immediate suspension was improper, an immediate suspension without pay should be

imposed only "when absolutely necessary to prevent a legitimate threat to the public," appellant should be reinstated with pay until a hearing occurred with appellant having "an opportunity to obtain and produce any and all relevant documentary evidence and witness statements/testimony," appellant's duties were unrelated to the allegations, and an immediate suspension without pay would cause appellant hardship because she supported two children. Counsel did not deny the allegations regarding appellant's behavior during the February 3, 2021 hearing.

In a March 1, 2021 memorandum to appellant, amended on March 4, 2021, the CDM acknowledged receipt of counsel's letter and stated she had determined appellant should be suspended immediately without pay because:

> [I]t is necessary to maintain order and the effective direction of public service. Although it is not alleged that [appellant] discussed the case(s) involving [her nephew] with anyone outside of [her] family, . . . [the] Court Orders and the [TCA's] Interoffice Memorandum clearly ordered/directed [her] to refrain from discussing [her nephew's] matters with any individuals involved in the case(s) or their processing and did not carve out an exception for communications with family members. Coaching [her] sister how to respond to the questions, while off camera, did interfere with the matter and constituted using the knowledge of [her] position as a [probation officer] for [her] sister's benefit.

A-2600-20

She concluded: "it is clear that [appellant] received and w[as] aware of the orders/directive to refrain from communications regarding [her nephew's] matters but knowingly chose to disregard them." She also informed appellant that she would receive a Preliminary Notice of Disciplinary Action seeking to impose major discipline on the same charges and she could request a hearing.

On March 4, 2021, appellant was served with a Preliminary Notice of Disciplinary Action, seeking her removal. The next day, her union representative filed an appeal of the charges and requested a hearing pursuant to the applicable collective negotiations agreement. That hearing took place over five days in June and July of 2021.

Before the hearing, on March 13, 2021, appellant filed with the Commission an "emergent petition for interim relief pursuant to N.J.A.C. 4A:2-2.5 and a stay." She argued the decision to immediately suspend her should be overturned because it was arbitrary, capricious, and a violation of N.J.A.C. 4A:2-2.5 and requested a hearing, citing <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532 (1985), and a stay. Appellant's counsel acknowledged the hearing in the removal action was then scheduled to take place on April 21, 2021.

A-2600-20

The Commission denied appellant's petition in a May 3, 2021 final administrative action, finding she had not met the standards for interim relief under N.J.A.C. 4A:2-1.2(c). Citing N.J.S.A. 11A:2-13 and N.J.A.C. 4A:2-2.5(a)(1), the Commission held "an employee may be suspended immediately and prior to a hearing where it is determined that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services." The Commission found it was "appropriate for the Vicinage to immediately suspend appellant as the alleged conduct has the potential to negatively impact the public trust in the Judiciary and affect internal working relations in her division. Further, the information provided in support of the instant petition does not demonstrate a clear likelihood of success on the merits." The Commission found appellant had not established irreparable harm given that her alleged harm was financial in nature and that "the public interest is best served by not having appellant on the job pending the outcome of any such charges." The Commission determined appellant was not entitled to a hearing prior to her suspension and that she had been given notice and an opportunity to respond. On May 19, 2021, appellant filed a notice of appeal of that decision.

A-2600-20

On August 27, 2021, the hearing officer who had heard the appeal of the disciplinary charges, issued a recommended decision. He found the following charges should be sustained: insubordination, N.J.A.C. 4A:2-2.3(a)(2); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12), based on a violation of the September 9, 2019 Order, the January 4, 2019 memorandum, and Canon 3 of the Code. He recommended the charge of other sufficient cause based on a violation of the September 6, 2017 order and Canon 4 of the Code be dismissed.

The hearing officer found the CDM's testimony about what had occurred during the February 3, 2021 hearing more credible than the testimony of appellant and Hailstork. In addition, based on his independent review of the recording of the hearing, the hearing officer found it "more likely than not" that appellant had given her sister an answer to a question and had "instructed her to answer 'yes or no.'" Finding appellant had violated Canon 3 of the Code, the hearing officer found "a Judiciary employee who coaches a witness for the defense during a live-streamed court hearing, prompting the judge presiding over the hearing to warn the employee, would tend to destroy the trust and confidence in the independence and integrity of the Judiciary." Citing the "egregiousness" of appellant's behavior "in coaching Ms. Hailstork while she

testified under oath in her nephew's court hearing" and the higher standard of conduct to which she was held as a probation officer, the hearing officer concluded the penalty of removal was appropriate and should be imposed.

The hearing officer addressed in a footnote appellant's argument regarding her immediate suspension. He stated, "[t]his decision disposes of [appellant's] argument that her immediate suspension was improper." As for her due-process argument, the hearing officer noted, "she had the opportunity to raise that argument in her petition for interim relief to the . . . Commission, subject to review by the Superior Court, Appellate Division."

In an August 30, 2021 letter, the Vicinage assignment judge advised appellant he was accepting the hearing officer's findings. Appellant was terminated from her employment.

In this appeal of the Commission's May 3, 2021 final administrative action, appellant argues the Commission erred in denying her request for interim relief because (1) the Vicinage had no basis to suspend her immediately without pay; and (2) she was entitled to a Loudermill hearing.

II.

We note at the outset "[j]udicial review of administrative agency action is a constitutional right." Silviera-Francisco v. Bd. of Educ. of City of Elizabeth,

224 N.J. 126, 136 (2016) (citing N.J. Const. art. VI, § 5, ¶ 4). In addition, Rule 2:2-3(a)(2) "authorizes an appeal as of right to the Appellate Division from final decisions or actions of any state administrative agency." Ibid. In deciding whether an agency decision is final for purposes of appeal, we consider whether the decision exhausts "all avenues of internal administrative review," Bouie v. N.J. Dep't of Cmty. Affs., 407 N.J. Super. 518, 527 (App. Div. 2009); whether "the agency communicates with 'unmistakable written notice [of] the finality' of its decision," Silviera-Francisco, 224 N.J. at 137 (quoting In re CAFRA Permit No. 87-0959-5, 152 N.J. 287, 301 (1997)); and whether the agency action is "characterized by findings of fact, conclusions of law, a definitive ruling, and a clear statement that the interested party may seek review of the decision and the manner in which that may be accomplished," id. at 139.

The Commission entitled the action that is the subject of this appeal as a "Final Administrative Action," set forth its findings and ruling, and concluded with the following statement: "This is the final administrative determination in this matter. Any further review should be pursued in a judicial forum." Based on the factors set forth above, we accept the May 3, 2021 Final Administrative Action of the Commission as a final action of a state administrative agency for purposes of appeal pursuant to Rule 2:2-3(a)(2) and consider it accordingly.

A-2600-20

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). We give "[w]ide discretion . . . to administrative decisions because of an agency's specialized knowledge." In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020). When more than one conclusion may be reached based on the evidence, we yield to the expertise of the agency. City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980). We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark, 82 N.J. at 539). An appellate court reviews legal questions de novo. Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 55 (2022). An agency's determination "is entitled to affirmance so long as the determination is not arbitrary, capricious, or unreasonable, which includes examination into whether the decision lacks sufficient support in the record or involves an erroneous interpretation of law." Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020); see also In re Young, 471 N.J. Super. 169, 176-77 (App. Div. 2022) (applying arbitrary-and-capricious standard when reviewing a final decision of the Commission). The party

challenging an agency's action bears the burden of proving the action was arbitrary, capricious, or unreasonable. In re Young, 471 N.J. Super. at 177.

A.

Pursuant to N.J.A.C. 4A:2-1.2(c), the Commission considers the following factors when reviewing a request for interim relief: (1) "[c]lear likelihood of success on the merits by the petitioner"; (2) "[d]anger of immediate or irreparable harm if the request is not granted"; (3) "[a]bsence of substantial injury to other parties if the request is granted"; and (4) "[t]he public interest." The Commission denied appellant's petition because it found she had not established any of those factors. We discern nothing arbitrary, capricious, or unreasonable in that decision.

The Commission reasonably concluded appellant had failed to establish a clear likelihood of success on the merits. N.J.S.A. 11A:2-13 and N.J.A.C. 4A:2-2.5(a) authorize the immediate suspension of an employee without a hearing if "an immediate suspension is necessary to maintain, safety, health, order or effective direction of public services." According to the CDM's February 26, 2021 memorandum, appellant was suspended immediately because her suspension was "necessary to maintain the order or effective direction of public

services" due to her "unauthorized active participation" during the February 3, 2021 hearing in her nephew's criminal case.

Appellant attempted to minimize what her participation was, characterizing it as merely supporting a family member. But the record contained ample credible evidence that she was whispering answers to her sister, while her sister was testifying, and telling her how to answer questions. That conduct – telling a witness how to answer questions when testifying under oath during a hearing in the case – was a clear violation of the September 9, 2019 order instructing appellant to refrain from discussing the matter with anyone involved in the case. It also supports a conclusion that appellant violated Canon 3, which holds court employees to a standard of conduct that preserves "the integrity and independence of the courts."

As the Commission found, appellant's alleged conduct – actively assisting a testifying witness contrary to an order and her ethical obligations – "has the potential to negatively impact the public trust in the Judiciary and affect internal working relations in her division," thereby threatening the "order [and] effective direction of public services," see N.J.S.A. 11A:2-13 and N.J.A.C. 4A:2-2.5(a), and warranting immediate suspension. Contrary to appellant's assertion, ample evidence in the record, including a recording of the actual events, demonstrated

appellant had met the criteria to be suspended and that the Commission reasonably concluded appellant had not established a clear likelihood of success on the merits.

The Commission reasonably concluded appellant had not established irreparable harm. Generally, irreparable harm is characterized by injury that cannot be compensated by monetary damages. Crowe v. DeGioia, 90 N.J. 126, 132-33 (1982). Appellant alleged only monetary harm.

The Commission reasonably concluded appellant had not established granting her request was in the public interest. Credible evidence in the record supported the conclusion appellant, a court employee, was favoring one side of the case by assisting a witness during a court hearing by providing her with answers and instructing her how to testify. Objectivity and fairness are cornerstones of our judicial system. See In re Commitment of Edward S., 118 N.J. 118, 148 (1990) ("One of the most important obligations of government, and in particular of the judiciary, is to legitimately preserve public confidence.").

B.

We are not persuaded by appellant's argument that she was entitled to a Loudermill "hearing" and perceive no violation of her due-process rights.

"<u>Loudermill</u> is a due process vehicle which requires in explicit terms that an employee 'is entitled to oral or written notice of the charges against him [or her], an explanation of the employer's evidence, and an opportunity to present his [or her] side of the story.'" <u>Caldwell v. N.J. Dep't of Corr.</u>, 250 N.J. Super. 592, 615 (App. Div. 1991) (quoting <u>Loudermill</u>, 470 U.S. at 546). And that is exactly what appellant received. In the February 26, 2021 memorandum, the CDM gave appellant written notice of her suspension and the charges against her, explained the evidence that supported the suspension and the charges, and advised her of her right to respond.

Appellant contends she was entitled to a hearing and not just a written notice. Citing <u>Loudermill</u>, 470 U.S. at 546, the New Jersey Supreme Court held in <u>In re Promulgation of Guardianship Services Regulations</u>, 103 N.J. 619, 632 (1986), that due process requires "notice to the affected party combined with an effective opportunity to respond." <u>See also</u> <u>Caldwell</u>, 250 N.J. Super. at 613. The Court recognized that the United States Supreme Court "has never held that the right to be heard of necessity means the right to a judicial hearing prior to intrusion upon a protected interest." <u>In re Promulgation</u>, 103 N.J. at 634. The Court held "the right to any additional process, including a judicial hearing, is

16 <span>A-2600-20</span>

governed by the now-familiar three-part balancing test of <u>Mathews v. Eldridge</u>,"

424 U.S. 319 (1976). <u>In re Promulgation</u>, 103 N.J. at 634.

> [T]he specific dictates of due process generally require [] consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> [<u>Ibid.</u> (quoting <u>Mathews</u>, 424 U.S. at 334-35).]

Considering those factors, we conclude due process did not require a hearing regarding appellant's suspension. The action at issue was a suspension, not a termination, of employment. <u>See</u> <u>Gilbert v. Homar</u>, 520 U.S. 924, 932 (1997) (recognizing the difference in a suspension and a termination of employment when considering the applicable due-process rights). The risk of an erroneous deprivation was minimal. The government's interest in maintaining public confidence in the judicial system would have been negatively impacted by keeping appellant on the job pending a hearing on her suspension. We discern no reversible error in the Commission's determination that appellant was not entitled to a hearing regarding her suspension under either <u>Loudermill</u> or N.J.A.C. 4A:2-2.5(b).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18